# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1908

_____

Ricky Barnard Tatum

*Plaintiff - Appellee*

v.

Willie Robinson, Sr. Captain, Arkansas State Police

*Defendant - Appellant*

Bobby Norman, Director, Law Enforcement Standards, AR State Police; John Does, Dillards Store Manager, Dillards CEO; Corizon

*Defendant*s

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 12, 2017
Filed: May 30, 2017

_____

Before LOKEN, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

This is a qualified immunity appeal. Willie Robinson, a senior corporal in the Arkansas State Police, arrested Ricky B. Tatum. Tatum sued Robinson, claiming he used excessive force by pepper spraying and choking him. The district court denied Robinson qualified immunity. Robinson appeals. Having jurisdiction under 28 U.S.C. § 1291, *see Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985), this court affirms in part, reverses in part, and remands.

I.

On April 29, 2014, a security camera operator at a Dillard's department store in Little Rock saw Tatum grab eight pairs of shorts from a display and walk toward nearby exit doors. The camera operator remotely locked the doors. Tatum tried to exit without paying. Finding the doors locked, he put down the shorts, walked around the store, told Dillard's staff the doors were locked, and returned to the area near the display. The camera operator alerted an assistant store manager and mall security. She also contacted Robinson, who was working off-duty as a security officer, and told him about Tatum's actions. Another mall security officer and at least two Dillard's employees waited near Tatum for Robinson to arrive.

Robinson, in plain clothes, walked up to the smaller Tatum. He said he was a law enforcement officer. He told Tatum he was under arrest and to put his hands on a clothes rack. Tatum argued with Robinson and did not comply. According to the other security officer at the scene, Robinson told Tatum that he would pepper spray him if he did not calm down.

About 14 seconds after walking up to Tatum, Robinson pepper sprayed his face for one second. The two then crashed into a display table. Tatum says he did not fight or resist. Robinson, however, says Tatum "began wrestling and fighting with him into a table." They struggled, and Robinson's hands got injured. With the other security officer's assistance, Robinson handcuffed Tatum. Tatum says Robinson was

choking him to the point he could not breathe. Robinson then walked Tatum to the store's security room with his arm around Tatum's neck. Tatum says he was choked the entire way. Robinson says he did not choke Tatum and Tatum was resisting. Once in the security room, Tatum says, Robinson repeatedly stomped, kicked, and slammed him, and called him "n****r mothafucker." Robinson denies all this, saying that, because Tatum kept getting up from his seat, he pushed Tatum back into his seat several times and then kicked his feet out from under him.

Video from Dillard's security cameras shows some of Tatum's acts before Robinson approached him, and some of their interactions before entering the security room. There is no audio. No video or audio was recorded inside the security room.

Tatum later pled guilty to felony robbery and misdemeanor resisting arrest and theft of property.

Tatum, incarcerated and pro se, sued Robinson for using excessive force. He submitted affidavits describing the events of April 29. Robinson moved for summary judgment on the basis of qualified immunity, citing witness affidavits, Tatum's guilty pleas, and the security footage. The district court denied qualified immunity on Tatum's claims that Robinson used excessive force by pepper spraying and choking him. Robinson appeals.

## II.

This court reviews de novo a district court's denial of summary judgment on the basis of qualified immunity, viewing the evidence most favorably to the plaintiff. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam); *Shannon v. Koehler*, 616 F.3d 855, 861-62 (8th Cir. 2010). *See also Scott v. Harris*, 550 U.S. 372, 378 (2007) (explaining court should not adopt a party's version of events if a video "clearly contradicts" its version of the story); *Mann v. Yarnell*, 497 F.3d 822, 826-27

(8th Cir. 2007) (holding a plaintiff does not create a genuine issue of material fact by offering "a dark and often unintelligible video coupled with an entirely speculative and wishful recitation of events that is neither substantiated by anything displayed in the video nor by the memory of any observer or participant present at the altercation"). To overcome an assertion of qualified immunity, a plaintiff "must present sufficient facts to show not only (1) that the officer's conduct violated a constitutional right, but also (2) that the right was clearly established at the time of the alleged violation." *Peterson v. Kopp*, 754 F.3d 594, 600 (8th Cir. 2014).

Officers' excessive uses of force violate the Fourth Amendment if "objectively unreasonable." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Objective unreasonableness is "judged from the perspective of a reasonable officer on the scene," in light of "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

A "defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014). Under "existing precedent," the constitutional question that the officer faced must have been "beyond debate." *Id.* While the court must not "define clearly established law at a high level of generality," *id.*, there does not need to be "a case directly on point." *White v. Pauly*, 137 S. Ct. 548 (2017) (per curiam).

Robinson contests the district court's findings that he violated Tatum's clearly established Fourth Amendment rights by pepper spraying and choking him.

## III.

Viewing the evidence of Robinson's use of pepper spray most favorably to Tatum: Dillard's security staff told Robinson a shoplifter in the men's department had tried to exit the store. Robinson approached Tatum, identifying himself as a law enforcement officer and telling Tatum he was under arrest. Robinson told Tatum to put his hands on a nearby clothes rack. Tatum did not put his hands on the clothes rack. He argued angrily with Robinson but did not physically fight him.[1] Robinson told Tatum he would pepper spray him if he did not calm down. Robinson then pepper sprayed Tatum's face for one second.

The district court based its decision on Robinson's witnesses' declarations and the security video. The court did not mention the affidavits that Tatum submitted—one says "I made no attempt to fight, but was choked and maced"—but it could have considered them. *See* **Fed. R. Civ. P. 56(c)(3)**. This court may affirm the district court on any basis supported by the record, which includes those affidavits. *See* ***Greenman v. Jessen***, 787 F.3d 882, 887 n.10 (8th Cir. 2015). *See also* **Fed. R. App. P. 10(a)**.

## A.

The objective reasonableness of Robinson's use of pepper spray turns on all the facts and circumstances, from the perspective of a reasonable officer on the scene. *Graham* directs this court's attention to three factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or

---

[1]Robinson's witnesses' declarations say Tatum was "combative" and "fighting" before he used pepper spray. The district court found that the security video showed no combat or fighting before Robinson used pepper spray. On appeal, Robinson does not contend that Tatum *physically* fought before the pepper spraying, asserting instead that Tatum argued angrily.

others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. By these factors and other facts and circumstances, a reasonable jury could find that Robinson's use of pepper spray was objectively unreasonable.

First, Tatum's suspected crime at the time of pepper-spraying—theft of eight pairs of shorts—was not severe. Tatum was, as the district court found, a "nonviolent, suspected misdemeanant." *See Peterson*, 754 F.3d at 600; *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009).

Second, a reasonable officer would not have thought Tatum posed an "immediate" threat to anyone's safety. There is no dispute that Tatum argued angrily with the larger Robinson and did not comply with an order. This court has found it may be unreasonable to pepper spray someone who refuses to comply with an officer's orders to leave a bus stop, calls the officer "rude," asks for his badge number, and tells the officer "you can't handle me like that." *Peterson*, 754 F.3d at 597, 599-601. Here, a reasonable officer might have thought that Tatum's angry arguing could eventually escalate to physical violence. But a reasonable officer would not think Tatum—who was angrily arguing but made no verbal threats or physical movements indicating a threat—posed an "immediate" safety threat. *See Johnson v. Carroll*, 658 F.3d 819, 827 (8th Cir. 2011) (finding use of force against person "interjecting her body between [arrestee] and the officers" unreasonable because there was "no evidence that [she] actively pushed the officers away from [arrestee], threatened them, or took any other action against them"); *Brown*, 574 F.3d at 497 (finding no threat posed by suspect, despite officer's stated belief that she might have used glass tumblers as weapons, because "[s]he did not reach for them, and she did not threaten the officers, verbally or physically"). *Cf. Cook v. City of Bella Villa*, 582 F.3d 840, 849 (8th Cir. 2009) (finding officer, alone and outnumbered by unpredictable intoxicated people, reasonably tased individual who yelled at and stepped toward him).

-6-

Third, a reasonable officer would not believe Tatum was "actively" resisting arrest. True, witness affidavits describe Tatum as fighting and resisting Robinson. But the district court found these statements inconsistent with the security footage. On appeal, Robinson does not contend that Tatum physically struggled with him, threatened him, or attempted to flee before he used the pepper spray. Noncompliance and arguing do not amount to active resistance. *Compare **Peterson***, 754 F.3d at 600 (concluding plaintiff was not resisting even though he refused to comply with orders and argued with officer), *and **Brown***, 574 F.3d at 497 (finding plaintiff who disobeyed commands to end 911 call was not actively resisting), *with **Ehlers v. City of Rapid City***, 846 F.3d 1002, 1011 (8th Cir. 2017) (finding plaintiff "appeared to be resisting" when he ignored officer's instructions and "continued walking"), *and **id.*** at 1007-08, 1011 (determining officers "reasonably could have interpreted" pinned-down plaintiff's "behavior of continuing to lay on his hands and refusing to comply with instructions as resistance"). *Cf.* **Ark. Code Ann. § 5-54-103(a)** (defining "resisting arrest" to require "using or threatening to use physical force or any other means that creates a substantial risk of physical injury to any person"). Viewing the facts most favorably to Tatum, a reasonable officer would not think he was "actively" resisting arrest.

Robinson contends that pepper spraying Tatum was reasonable partly because Tatum was armed and pled guilty to resisting arrest. Officers found a metal shank in Tatum's coat pocket *after* he was in the security office. This later discovery does not justify Robinson's earlier use of pepper spray because there is no evidence he knew or suspected that Tatum had the shank at the time he used pepper spray. *See* **Graham**, 490 U.S. at 396 ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). Neither does Tatum's later guilty plea justify Robinson's use of pepper spray. The guilty plea does not show *when* he resisted arrest. Viewed most favorably to Tatum, it does not show Tatum was resisting arrest before Robinson used the pepper spray.

Robinson used force on a non-resisting, non-fleeing individual suspected of a completed, non-violent misdemeanor—the type of individual against whom the use of force is "least justified." *See Small v. McCrystal*, 708 F.3d 997, 1005 (8th Cir. 2013). However, just because force is "least justified" against a suspect like Tatum does not mean it is never justified. As *Graham* says, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. When a suspect poses a non-immediate safety threat by repeatedly refusing to comply with officers' reasonable, lawful commands, officers may reasonably use some force to secure compliance. *See Hollingsworth v. City of St. Ann*, 800 F.3d 985, 988, 990 (8th Cir. 2015) (acknowledging it was reasonable to use "*some* force" when a recently arrested person repeatedly refused to change into a jumpsuit and waived a finger at officer, telling him not to use a taser). But even when officers are justified in using some force, they violate suspects' Fourth Amendment rights if they use unreasonable amounts of force. *See id*. For example, officers justified in using "*some* force" against noncompliant suspects posing non-immediate safety threats may act unreasonably by pepper spraying them without warning or by tasing them. *See id.* at 987, 990 (determining use of taser on noncompliant suspect may be unreasonable); *Peterson*, 754 F.3d at 600-01 (finding use of pepper spray on noncompliant suspect may be unreasonable); *Brown*, 574 F.3d at 497-98 & n.4 (finding use of taser on a "frightened" suspect "quietly" disobeying orders unreasonable).

Here, by the undisputed facts, Robinson informed Tatum he was a police officer, told him he was under arrest, told him to put his hands on a clothes rack, warned him he would use pepper spray if he did not calm down, and then pepper sprayed him. Tatum was given an opportunity to comply. He did not, instead arguing angrily with Robinson. It was reasonable for Robinson to use *some* force. But it was not reasonable to immediately use significant force. In addition to the lack of justification from the three *Graham* factors, other facts and circumstances indicate

only limited force was reasonable.  Robinson was not alone—another security officer was close by, as were at least two Dillard's employees.  *See Brown*, 574 F.3d at 498 (finding force less justified where four officers were present than where only one officer was present).  Robinson was off-duty and in plain clothes.  *See Rogers v. Carter*, 133 F.3d 1114, 1118 (8th Cir. 1998) (acknowledging it was "prudent" for plaintiff to retreat from plainclothes officer who "did nothing more than declare himself a police officer" and "neither wore nor produced a badge or any other indicia of authority as a police officer, even after [plaintiff] specifically asked to see identification").

It was not reasonable for Robinson to immediately use pepper spray.  Pepper spray can cause more than temporary pain.  *See Peterson*, 754 F.3d at 601; *Brown*, 574 F.3d at 500 n.6 (citing testimony that "Taser and pepper spray are coequals on the use of force continuum").  Robinson presents no evidence he attempted to use other force to secure compliance—no evidence he tried to grab Tatum's hands and place them on the clothes rack, for example.  *See Hollingsworth*, 800 F.3d at 990 ("The issue in this case is whether [officer], having justification to use *some* force . . . violated [plaintiff's] clearly established rights by deploying the Taser rather than employing other means such as physical restraint and forcible removal of clothing").  Instead, he proceeded to pepper spray Tatum 14 seconds after he encountered him, and necessarily fewer seconds after Tatum failed to comply with his command.

Robinson emphasizes an Eleventh Circuit case that says, "Courts have consistently concluded that using pepper spray is reasonable . . . where the plaintiff was either resisting arrest or refusing police requests."  *Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002).  That Eleventh Circuit case cites an Eighth Circuit case for support.  *See Ludwig v. Anderson*, 54 F.3d 465 (8th Cir. 1995).  There, an "emotionally disturbed" Ludwig "had a strong grip on something underneath his poncho" and repeatedly refused to show his hand.  An officer sprayed his chest with mace.  *Id.* at 468.  Ludwig then pulled a knife, switched it from hand to hand, and

looked like he might throw it. Officers repeatedly asked him to drop the knife. He did not. An officer then maced him in the face. *Id.* at 468-69. This court held that police "violated no clearly established right by macing Ludwig." *Id.* at 471. When police maced Ludwig, he was actively resisting arrest and posing an immediate safety threat. When Robinson pepper sprayed Tatum, he was doing neither of those things.

Given the limited justification for using force against Tatum, a jury could find that Robinson used an unreasonable amount of force when he pepper sprayed Tatum.

B.

To determine whether Robinson violated clearly established law by pepper spraying Tatum, this court looks to the law at the time he used force. *See Peterson*, 754 F.3d at 601. As of April 29, 2014, the question that Robinson faced was not "beyond debate." The district court, relying on *Brown*, found otherwise. *Brown* clearly established "it was unlawful to Taser a nonviolent, suspected misdemeanant who was not fleeing or resisting arrest, who posed little to no threat to anyone's safety, and whose only noncompliance with the officer's commands was to disobey two orders to end her phone call to a 911 operator." *Brown*, 574 F.3d at 499. But the situation Robinson faced differed in significant ways from the situation the officer faced in *Brown*. Tatum was angrily arguing; Brown was sitting quietly. Robinson warned Tatum before he used the pepper spray; the officer did not warn Brown before tasing her. Other cases decided before April 29, 2014, indicated an officer might be justified in using pepper spray (or similar force) on an angrily arguing individual after giving a warning. *See Johnson*, 658 F.3d at 827 (emphasizing lack of warning before spraying mace); *Cook*, 582 F.3d at 849 (finding officer reasonably tased individual who was yelling at officer and took step toward him, where other facts indicated force was reasonable).

-10-

Tatum's right to be free from the use of pepper spray under these facts was not sufficiently definite. A reasonable officer in Robinson's shoes could have believed he was not violating Tatum's rights by pepper spraying him because Tatum was angrily arguing and was warned before the pepper spray was used. The district court erred in concluding Tatum's right to not be pepper sprayed was clearly established.

IV.

Tatum submitted an affidavit that states:

> I was first sprayed in the eyes with mace then choked very aggressively to the point w[h]ere I couldn't breath[e]. I begged Officer Robinson to please stop choking me because I was not fight[ing] or resisting. I then begged for someone to please put handcuffs on me so Officer Robinson would stop choking me that's when a man came over and put my hands in cuffs. At this time I was unable to see nor had use of my hands so why was I still pulled by the neck and still choked to the escalator, up the escalator and to the [D]illard's security office?

A.

Viewing the evidence most favorably to Tatum, Robinson choked him for an extended period of time although he was restrained and not resisting. A reasonable jury could find that Robinson's use of force was objectively unreasonable. As explained, Robinson pepper sprayed Tatum when the *Graham* factors "least justified" use of force. After Robinson used the pepper spray, there was no justification for choking a restrained, non-fighting, non-resisting Tatum. Suspects' Fourth Amendment rights to be free from excessive force are violated if officers choke, kick, or punch them when they are restrained, not fighting, and not resisting. ***Chambers v. Pennycook***, 641 F.3d 898, 902, 907-08 (8th Cir. 2011) (choking and kicking); ***Krout v. Goemmer***, 583 F.3d 557, 566 (8th Cir. 2009) (kicking and punching);

-11-

*Henderson v. Munn*, 439 F.3d 497, 502-03 (8th Cir. 2006) (pepper spraying and kneeing).

Arguing his use of force was reasonable, Robinson says he was not choking Tatum and Tatum was resisting. These contentions are directly contradicted by Tatum's affidavit. This court may not resolve genuine disputes of material fact in Robinson's favor at the summary judgment stage. *See Tolan*, 134 S. Ct. at 1866. Viewing the evidence most favorably to Tatum, Robinson unreasonably used excessive force by choking him.

B.

As of April 29, 2014, it was clearly established that a suspect's Fourth Amendment rights were violated by uses of force like Robinson's. *See Chambers*, 641 F.3d at 907-08 (establishing it violates Fourth Amendment to kick and choke restrained, non-resisting suspect even if the kicking and choking causes only *de minimis* injuries); *Krout*, 583 F.3d at 566 ("It was clearly established that the use of this type of gratuitous force against a suspect who is handcuffed, not resisting, and fully subdued is objectively unreasonable under the Fourth Amendment."); *Henderson*, 439 F.3d at 503 (holding use of pepper spray on a suspect who was "subdued and restrained with handcuffs" "may have been a gratuitous and completely unnecessary act of violence and thus violated Henderson's Fourth Amendment rights" (internal quotation marks omitted)). These cases put the question of the constitutionality of choking Tatum beyond debate because they clearly establish that it violates the Fourth Amendment to choke a suspect who is handcuffed and not resisting. The district court correctly denied qualified immunity on the choking claim.

\* \* \* \* \* \* \*

The judgment of the district court is affirmed in part, reversed in part, and the case remanded for proceedings consistent with this opinion.

LOKEN, Circuit Judge, dissents from Parts III.A. and IV.

_____