# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1148

_____

Tom Johnson,

*Plaintiff - Appellee*,

v.

Patrick McCarver, in his individual and official capacity as an officer of the City of Minneapolis; City of Minneapolis for John LaLuzerne, Deceased,

*Defendants - Appellants*,

City of Minneapolis,

*Defendant*.

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 13, 2019
Filed: November 1, 2019

_____

Before LOKEN, COLLOTON, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Tom Johnson sued Sergeant Patrick McCarver and Officer John LaLuzerne under 42 U.S.C. § 1983, alleging that the officers violated his constitutional rights by carrying out an arrest without probable cause and in retaliation for speech, falsifying a police report, using excessive force against him, and conspiring to violate his rights. The officers unsuccessfully moved for summary judgment, and they appeal the district court's denial of qualified immunity. We affirm in part and reverse in part.

I.

Johnson is a 6-foot 3-inch, 284-pound professional football player, who most recently played defensive tackle for the Minnesota Vikings. Because this appeal arises from the denial of a motion for summary judgment, we recite any disputed facts in the light most favorable to Johnson.

On October 5, 2014, around 2:15 a.m., Johnson was waiting inside the lobby of a nightclub called "Seven" for a parking attendant to return with his car. The club had closed at 2:00 a.m, but Johnson, along with other patrons, remained inside. Bryant Webster, the club's lead security doorman, approached Johnson. According to Johnson, Webster told Johnson that he needed to leave because his boots violated the dress code. Johnson argued that he should be allowed to wait in the lobby, and Webster walked away.

Webster subsequently told Sergeant Patrick McCarver, an off-duty police officer working for the club, that Johnson needed to leave. McCarver approached Johnson and told him to leave. Johnson explained to McCarver that he was waiting for his car and showed him a valet parking receipt. He questioned why McCarver was singling him out when others were also waiting for their cars. McCarver's fellow

-2-

off-duty officer, John LaLuzerne, walked over and also told Johnson he needed to leave.

McCarver put his hand on Johnson's tricep and nudged him towards the door. Johnson began walking backward toward the door, telling the officers, "you don't have to put your hands on me," and asking them, "why are you touching me"? The officers guided Johnson toward the door, and McCarver then shoved him against it. Johnson pressed against the door, which opened slightly, and then bounced back towards the officers. McCarver directed pepper spray at Johnson, and both officers then pushed him out the door.

Outside the club, Johnson called a car to drive him home. While waiting for the car to arrive, Johnson sat on a planter directly outside the club. More than fifteen minutes later, the officers walked out of the club, and Johnson began filming them with his cell phone camera. McCarver saw Johnson, approached him, and asked for his identification. Johnson said that he possessed his identification, but was not going to give it to McCarver, because he had not "done anything wrong."

McCarver slapped the cell phone out of Johnson's hand, and the phone hit the ground and shattered. Johnson stood up, bent over, picked up the phone, and sat back down. Both officers turned on their taser guns, and McCarver tased Johnson in the back, pulling the trigger twice. The first time McCarver squeezed the trigger for nine seconds; the second time for five. Johnson fell to the ground, and the officers put him on his side.

The officers handcuffed Johnson and took him to the Hennepin County Jail for booking. The county attorney charged Johnson with trespass, disorderly conduct, and obstructing legal process. After a week-long trial, a jury acquitted him of all charges.

-3-

Johnson sued McCarver, LaLuzerne, and the City of Minneapolis, alleging claims under federal and state law. He voluntarily dismissed his claim against the City and his state-law claim against the officers. The officers moved for summary judgment on the federal claims, arguing that qualified immunity precluded the lawsuit. The district court denied the motion, concluding that there were genuine disputes of material fact that required a trial.

II.

As an initial matter, Johnson contends that because the district court determined that factual disputes precluded summary judgment, we lack jurisdiction to review those rulings. We ordinarily lack jurisdiction to decide "which facts a party may, or may not, be able to prove at trial," *Johnson v. Jones*, 515 U.S. 304, 313 (1995), and we are "constrained by the version of the facts that the district court assumed or likely assumed in reaching its decision." *Thompson v. Murray*, 800 F.3d 979, 983 (8th Cir. 2015). But we do have "authority to decide the purely legal issue of whether the facts alleged by the plaintiff are a violation of clearly established law." *Franklin ex rel. Estate of Franklin v. Peterson*, 878 F.3d 631, 635 (8th Cir. 2017). The officers ask us to review that purely legal issue, so we have jurisdiction.

When a defendant asserts a defense of qualified immunity, a plaintiff must show that the facts taken in the light most favorable to him establish (1) that the defendant violated his constitutional right and (2) that the right was clearly established at the time of the incident. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A right is "clearly established" only if the violation was "beyond debate" such that only a plainly incompetent officer or a knowing lawbreaker would engage in the alleged misconduct. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

A.

Johnson first alleges violations of the First and Fourth Amendments arising from his arrest. He contends that the officers violated his Fourth Amendment right to be free from an unreasonable seizure without probable cause. Under the First Amendment, he claims that the officers carried out a retaliatory arrest based on his exercise of a right to free speech when he filmed the officers. An arrest generally does not violate the Fourth Amendment or the First Amendment when it is supported by probable cause that the arrestee committed a misdemeanor offense in the presence of an arresting officer. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1723-24 (2019); *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). The officers here are entitled to qualified immunity on these First and Fourth Amendment claims if Johnson's arrest was supported by at least *arguable* probable cause. *Waters v. Madson*, 921 F.3d 725, 741 (8th Cir. 2019); *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005). Arguable probable cause exists if it turns out that an officer lacked adequate grounds for an arrest, but made an objectively reasonable mistake about the existence of probable cause. *Borgman v. Kedley*, 646 F.3d 518, 523 (8th Cir. 2011). The officers contend that there was at least arguable probable cause to arrest Johnson for trespass, obstruction of justice, and disorderly conduct.

A person commits a misdemeanor under Minnesota law when he "trespasses on the premises of another and, without claim of right, refuses to depart from the premises on demand of the lawful possessor." Minn. Stat. § 609.605, subd.1 (b)(3). A "demand of the lawful possessor" may come from the possessor or his agent. *State v. Dubose*, No. A15-0069, 2015 WL 9437521, at *2 (Minn. Ct. App. Dec. 28, 2015); *see State v. Quinnell*, 151 N.W.2d 598, 602-03 (Minn. 1967). The term "agent" is "one of wide signification" in this context, and a police officer can be the agent of a private landowner for the purpose of conveying a revocation of license or a demand to depart. *Quinnell*, 151 N.W.2d at 602.

It is undisputed that after the club closed, the lead security doorman Webster told Johnson that he was no longer allowed in the club and needed to leave. Moments later, Webster told McCarver, while pointing at Johnson, that "[h]e needs to leave right now." McCarver then approached Johnson and also told him to leave. LaLuzerne told Johnson to leave. Johnson admits that he did not leave promptly after receiving McCarver's instruction to exit. He instead argued with McCarver, first telling him that he was waiting for his vehicle and then asking why he was being singled out. Johnson contends that he did not trespass, however, because he had a claim of right to remain in the lobby to wait for his car, and minimal further investigation would have verified that right.

We conclude that the officers are entitled to qualified immunity on these claims. Even if Johnson initially had a right to wait in the lobby, a reasonable officer could have believed that Webster or the officers themselves revoked that right by directing Johnson to leave. *See Quinnell*, 151 N.W.2d at 602-03; *State v. Bragg*, No. A17-0287, 2018 WL 817283, at *3 (Minn. Ct. App. Feb. 12, 2018). Minimal further investigation would not have affected that conclusion. What the officers saw, in addition to what Webster told McCarver, along with Johnson's resistance to the officers' commands to leave, provided arguable probable cause to arrest for trespass.

Johnson also claims that there is a factual dispute about whether McCarver heard Webster tell Johnson that he needed to leave. Without hearing that direction, he argues, McCarver lacked probable cause that Johnson was trespassing. But whether or not McCarver heard Webster's statement to Johnson, it is undisputed that Webster told McCarver that Johnson needed to leave; that Johnson did not hear the Webster-McCarver communication does not create a genuine dispute. Johnson then refused to leave after McCarver and LaLuzerne told him to do so. These undisputed facts are sufficient to establish arguable probable cause that Johnson trespassed, so

-6-

any dispute about McCarver hearing Webster's communication to Johnson is not material.

In denying qualified immunity, the district court thought "[t]he fact that the officers allowed a substantial length of time to pass before arresting Johnson casts doubt on the officers' claim that they had probable cause to arrest him." That analysis appears to confuse the subjective beliefs of the officers with the objective requirements of the Fourth Amendment. Whether the officers subjectively thought there was probable cause to arrest for trespass is irrelevant. *Carpenter v. Gage*, 686 F.3d 644, 649 (8th Cir. 2012). We examine only the objective question whether the circumstances known to the officers established a fair probability that Johnson committed an offense. Johnson's refusal to leave after agents of the club revoked his license to remain established arguable probable cause to believe that he trespassed. Arguable probable cause that he had committed an offense inside the club continued to exist fifteen minutes later when the officers arrested Johnson. Whether the officers exercised poor judgment in electing to arrest Johnson after the original dispute was resolved is not pertinent to the objective probable-cause analysis under the Fourth Amendment.

The officers also claim qualified immunity on Johnson's claim under the Due Process Clause. Johnson asserts that the officers deprived him of liberty without due process of law by falsifying a report of his arrest. Any deprivation of Johnson's liberty before his criminal trial, however, is governed by the Fourth Amendment and its prohibition on unreasonable seizures. *Manuel v. City of Joliet*, 137 S. Ct. 911, 917 (2017). (On this issue, *Manuel* abrogated *Moran v. Clarke*, 296 F.3d 638, 646-47 (8th Cir. 2002) (en banc).) Any *post-trial* claim based on the alleged false report requires a showing that the report was used to deprive Johnson of liberty in some way. *See Winslow v. Smith*, 696 F.3d 716, 735 (8th Cir. 2012). The jury acquitted Johnson, and he suffered no deprivation of liberty after the trial. Accordingly, there

is insufficient evidence to support a finding that the officers violated Johnson's rights under the Due Process Clause.

For these reasons, the officers are entitled to qualified immunity on Johnson's claims alleging false arrest under the Fourth Amendment, retaliatory arrest under the First Amendment, and deprivation of liberty in violation of the Due Process Clause.

B.

The officers next assert qualified immunity on Johnson's claims that the officers violated his Fourth Amendment right to be free from an unreasonable use of force. Johnson asserts that the officers violated his rights when they shoved him in the club lobby, applied pepper spray in his face at the club's exit, and stunned him with a taser gun while he waited for a car outside the club. An officer's use of force violates the Fourth Amendment if it is objectively unreasonable. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Reasonableness is judged from the perspective of reasonable officers on the scene, "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 396-97.

Johnson first claims that the officers used excessive force when they pushed him in the club lobby and applied pepper spray at the club's exit. Johnson acknowledged that he initially did not comply with McCarver's instructions to leave, and that he began backing toward the door only after McCarver pushed him in that direction. Surveillance video shows that when Johnson made contact with the door, the door opened slightly. But instead of exiting through the partially-opened door, Johnson stopped and raised his hands in front of his chest. Although Johnson testified that he was trying to leave in compliance with the officers' orders, a reasonable officer could have believed that Johnson was resisting, and that it was necessary to use force to eject him from the club. The amount of force applied was

not unreasonable under the circumstances, given Johnson's apparent resistance, size, and strength. The officers are thus entitled to qualified immunity on Johnson's claims alleging use of excessive force inside the club.

McCarver asserts that he is also entitled to qualified immunity on Johnson's claim that McCarver used excessive force by tasing him outside the club. On this point, we agree with Johnson. There are genuine disputes of material fact about whether McCarver's use of the taser violated Johnson's clearly established rights under the Fourth Amendment.

It is undisputed that more than fifteen minutes after Johnson exited the club, the officers went outside and saw that Johnson was sitting on a planter while filming them with his cell phone. McCarver approached Johnson and knocked Johnson's phone to the ground. Johnson stood up, bent over, picked up his phone, and sat back down on the planter.

The parties disagree about what happened next. Johnson testified that "[o]nce [he] sat down," McCarver tased him in the back. The officers contend that Johnson stood up again before McCarver fired his taser: LaLuzerne testified that Johnson stepped onto the planter and "lunged back down at" him; McCarver asserts that Johnson "stepped onto the bench" surrounding the planter, and pushed LaLuzerne away from him. The officers argue that we should disregard Johnson's account because it is "blatantly contradicted" by video footage from a security camera. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). The district court saw no blatant contradiction and concluded that "the video is more supportive of Johnson's version of the incident." Having reviewed the evidence ourselves, we deem it inconclusive. In reviewing the denial of a motion for summary judgment, therefore, we accept Johnson's version that he was seated peacefully on the planter when McCarver tased him.

-9-

At the time of the incident, it was clearly established that it was unreasonable under the Fourth Amendment to apply a taser to a "nonviolent, suspected misdemeanant who was not fleeing or resisting arrest, [and] who posed little to no threat to anyone's safety." *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009). Taking the facts in the light most favorable to Johnson, McCarver violated this clearly established right when he applied the taser to Johnson. The district court correctly determined that there are genuine issues of material fact that preclude summary judgment on this claim.

\*     \*     \*

For the foregoing reasons, we reverse the district court's order denying qualified immunity for the officers on Johnson's claims alleging false arrest, retaliatory arrest, deprivation of liberty without due process, and use of excessive force inside the club. We affirm the order with respect to Johnson's claim against McCarver alleging use of excessive force by the taser.

KELLY, Circuit Judge, concurring in part and dissenting in part.

I agree that the officers are entitled to qualified immunity on Johnson's deprivation-of-liberty claim because he suffered no post-trial deprivation of liberty. I also agree the officers are not entitled to qualified immunity on Johnson's claim for excessive force arising from the tasing. I disagree, however, that the officers are entitled to qualified immunity on Johnson's remaining Fourth Amendment claims for false arrest and excessive force, as well as his First Amendment retaliation claim.

-10-

I

The court concludes that the officers are entitled to qualified immunity on Johnson's claims for false arrest under the Fourth Amendment and retaliatory arrest under the First Amendment because the officers had arguable probable cause to arrest Johnson for trespass. I disagree.

A person is guilty of misdemeanor trespass in Minnesota if he or she "intentionally . . . trespasses on the premises of another and, without claim of right, refuses to depart from the premises on demand of the lawful possessor." Minn. Stat. § 609.605. "Express or implied consent"—that is, a license to remain on the premises—from someone "who has the authority to give such consent is a defense to the charge of criminal trespass." State v. Hoyt, 304 N.W.2d 884, 889 (Minn. 1981). An act is not trespass if "committed in good faith by one who actually . . . believes that he is authorized" to remain on the premises. State v. Brechon, 352 N.W.2d 745, 749 (Minn. 1984) (cleaned up). A person's belief that he has a right to remain on the premises need not be factually correct; a mistaken but reasonable claim of right is a defense to trespass. Hoyt, 304 N.W.2d at 891.

Viewing the record in the light most favorable to Johnson, the officers lacked arguable probable cause to arrest him for trespass. Just before 2:00 a.m. on October 5, 2014, Johnson stepped outside Seven to give his ticket to the valet and then waited for his car inside, where about a dozen others were also waiting. Seven's doorman, Bryan Webster, asked Johnson to leave. Johnson told Webster he was waiting for the valet, and Webster responded that his boots violated the club dress code. Johnson explained that he had been to Seven before with its owners, wearing the same boots, and said he did not understand why he was being singled out from everyone else also waiting in the lobby. When Johnson showed Webster his valet ticket, Webster asked,

-11-

"Who are you?" Johnson responded, "I'm nobody." Webster said, "F*** it," and walked away.

Minneapolis police officers Patrick McCarver and John LaLuzerne were also inside Seven that evening, working as security in their full police uniforms.[1] After Webster had walked away from Johnson, one of the officers announced that everyone should leave the club. Johnson assumed this did not include those waiting for the valet because, when he looked around, no one else responded to the announcement by leaving. McCarver soon approached Johnson and told him to leave. Johnson showed him his valet ticket and explained he was waiting for his car. At this, McCarver pushed Johnson. Johnson began backing up toward the exit, telling McCarver that it was not necessary to push. As Johnson was backing up, the officers continued to push him. Johnson placed his hands near his chest to protect himself, and did not curse or raise his voice. Once Johnson was almost at the exit, McCarver pushed him hard, and Johnson bounced off the door. Johnson said, "You don't have to do that." McCarver then sprayed Johnson's face with pepper spray, and the officers pushed him out the door.

A reasonable officer would understand that Johnson was no different than any other person waiting in the lobby for the valet to bring around their car. While Webster told Johnson he would have to leave because the owner would not allow his boots, Johnson explained the owner had previously allowed his boots. Hearing this explanation, Webster walked away. When McCarver approached Johnson and told him to leave, Johnson said he was in fact leaving, but was just waiting for the valet like the rest of the patrons—a claim of right to be inside the lobby. See Hoyt, 304 N.W.2d at 891. McCarver then pushed Johnson as he was backing up toward the exit. Viewing the facts in the light most favorable to Johnson, he was not refusing to leave

---

[1]Their doing so was in violation of police department policy.

the premises, and his right to remain in the lobby had not been revoked. Rather, he was lawfully inside awaiting the valet. As such, the elements of trespass were not satisfied, and the officers are not entitled to qualified immunity on Johnson's false arrest claim.

II

Because I believe the officers lacked even arguable probable cause to arrest Johnson, I also believe his First Amendment retaliation claim remains viable. Johnson alleges the officers arrested him in retaliation for recording them with his cell phone outside the club. To succeed on a claim for retaliatory arrest, Johnson must show (1) he engaged in a protected activity; (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing the activity; (3) the adverse action was motivated at least in part by the exercise of the protected activity; and (4) lack of probable cause or arguable probable cause for the arrest. See Hoyland v. McMenomy, 869 F.3d 644, 655 (8th Cir. 2017).

The officers do not dispute the facts underlying this claim, but instead argue they are entitled to qualified immunity because Johnson's right to record and photograph the officers was not clearly established. While this Court has not decided this precise question, I would join every circuit that has done so and hold that the First Amendment protects the right to record police officers in public. See Fields v. City of Philadelphia, 862 F.3d 353, 360 (3d Cir. 2017); Turner v. Lieutenant Driver, 848 F.3d 678, 690 (5th Cir. 2017); ACLU of Ill. v. Alvarez, 679 F.3d 583, 595 (7th Cir. 2012); Glik v. Cunniffe, 655 F.3d 78, 82 (1st Cir. 2011); Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000); Fordyce v. City of Seattle, 55 F.3d 436, 439 (9th Cir. 1995).

Moreover, absent binding authority from this Court, a "robust consensus of cases of persuasive authority" can itself "clearly establish" the federal right Johnson alleges. See Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015); Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011). By the time the officers arrested Johnson, all four circuit courts that had considered the question decided that filming the police in public is a First Amendment right. See Alvarez, 679 F.3d at 595; Glik, 655 F.3d at 82; Smith, 212 F.3d at 1333; Fordyce, 55 F.3d at 439. This "robust consensus," together with our general pronouncement that a citizen's "right to exercise First Amendment freedoms without facing retaliation from government officials is clearly established," Baribeau v. City of Minneapolis, 596 F.3d 465, 481 (8th Cir. 2010), was more than sufficient to put McCarver and LaLuzerne on notice that they were violating Johnson's clearly established right, see al-Kidd, 563 U.S. at 741. Consequently, I would hold that the officers are not entitled to qualified immunity for this claim.

III

Finally, the court concludes the officers are entitled to qualified immunity on Johnson's claim of excessive force for using pepper spray and pushing him inside the club, because such force "was not unreasonable under the circumstances." I disagree.

An officer's use of force violates the Fourth Amendment if it is "objectively unreasonable." Tatum v. Robinson, 858 F.3d 544, 547 (8th Cir. 2017). Reasonableness depends on the circumstances surrounding the use of force, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).

Here, viewing the facts in the light most favorable to Johnson, a jury could find the officers were objectively unreasonable in pushing and pepper-spraying him. As to the first Graham factor, Johnson had not committed any crime before McCarver directly pepper-sprayed his face, which we have characterized as "significant force." See id. at 550; see also Brown v. City of Golden Valley, 574 F.3d 491, 500 n.6 (8th Cir. 2009) (citing testimony that "Taser and pepper spray are coequals on the use of force continuum"). This strongly favors finding excessive force. See Tatum, 858 F.3d at 548; Peterson v. Kopp, 754 F.3d 594, 600 (8th Cir. 2014).

As to the second factor, a reasonable officer would not have thought Johnson posed an immediate threat to anyone's safety. Johnson was leaving the club, telling the officers that they did not need to push him, just before McCarver pepper-sprayed his face. Johnson made "no verbal threats or physical movements indicating a threat." See Tatum, 858 F.3d at 549. Indeed, Eric French, Seven's manager on duty, testified that Johnson remained "pretty calm" through the whole ordeal. This further undermines the reasonableness of the officers' conduct. See id. (finding it objectively unreasonable to use pepper spray on a suspected misdemeanant who was "angrily arguing" with the police but making no physical or verbal threats).

Third and finally, a reasonable officer would not believe Johnson was resisting arrest. Instead, Johnson was trying to leave the lobby as requested when the officer pepper-sprayed him. In any event, even "[n]oncompliance and arguing do not amount to active resistance." See id. Viewing the facts in the light most favorable to Johnson, the three Graham factors provide no justification for pushing and pepper-spraying him and, as a result, the officers' use of force was objectively unreasonable. See id.; Peterson, 754 F.3d at 600.

The officers also argue that the right at issue was not clearly established. But by the time they acted on October 5, 2014, we had held in Peterson v. Kopp that it

-15-

was objectively unreasonable for the police to use pepper spray on a non-fleeing, non-violent suspect who "took a few steps backward, put his hands up, and said '[y]ou can't handle me like that'" immediately before being pepper-sprayed. See Peterson, 754 F.3d at 597, 600. Because these facts are sufficiently similar to this case, McCarver and LaLuzerne had "fair warning" that their actions were unconstitutional. See id. at 600; see also Henderson v. Munn, 439 F.3d 497, 503 (8th Cir. 2006) (denying qualified immunity to an officer who pepper-sprayed a suspect posing "little or no threat" to anyone's safety). McCarver and LaLuzerne violated Johnson's clearly established right and qualified immunity does not apply. See Peterson, 754 F.3d at 600.

_____

-16-