# United States Court of Appeals
## For the Eighth Circuit
_____

No. 23-2656
_____

Christopher Sean Drew

*Plaintiff - Appellant*

v.

City of Des Moines; Dana Wingert, Individually and in his official capacity with the City of Des Moines Police Department; Jason Hemsted, Individually and in his official capacity with the City of Des Moines Police Department; Jordan Ulin, Individually and in his official capacity with the City of Des Moines Police Department

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: March 12, 2024
Filed: August 2, 2024
_____

Before BENTON, ERICKSON, and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

While arresting Christopher Drew, Officer Jason Hemsted pepper sprayed him at close range without warning. Drew sued Officer Hemsted, among others, for

violating his Fourth Amendment right to be free from unreasonable seizures. The district court[1] granted summary judgment to the defendants. We affirm.

## I.

Officer Hemsted and Officer Jordan Ulin were sent to investigate a woman's complaint of harassment from her next-door neighbor. She and her one-year-old daughter were sitting in the grass outside the apartment building when Officer Hemsted arrived. She told him that her neighbor, Drew, was "always trying to get into [her] apartment" and that he had threatened to kill her and "blow [the] place up." That day, he had grabbed her shoulders and asked her, "Baby, why you . . . leaving me." When he blocked her doorway and refused to let her leave, she called the building manager to intervene. With the manager standing between them, the woman scooped up her daughter and escaped—but not before Drew lunged at her more than once. She told Officer Hemsted that Drew was running around looking for her. She was fed up. Drew's non-stop harassment left her feeling unsafe in her own home, and she wanted him arrested.

When Officer Ulin arrived, the two went inside and found the manager. She told them that Drew was "a drunken idiot" who "dogs all the single women" and that residents had to call police on him "sometimes five times a day." She also said that there was a case pending against Drew after he "busted in" another female neighbor's door. She thought Drew was in his apartment drinking, and as she led the officers to his unit, she warned that he "gets right up in your space." They passed other residents on their way, one of whom commented, "I'm assuming [Drew] . . . as usual."

When the trio got to Drew's apartment, they could hear arguing inside. A woman yelled, "Get the fuck out of my way, bro!" After some more shouting, Drew

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

opened the door and let her out. She rushed past the officers, thanking them repeatedly and asking them to please let her leave. Drew remained in the doorway, acknowledged the officers, and then yelled toward the fleeing woman, "Bitch, if you ever come in my crib!"—but she was already down the stairs and out of sight.

What happened next took about 14 seconds. Officer Hemsted put his hand on Drew's arm and asked, "Do you got anything on you, any drugs, any guns?" Drew shot back, "If you touch me one more goddamn time, we gonna have a problem." Officer Hemsted unholstered his pepper spray and asked, "Is that right?" But Drew was firm—"Please. Do not touch me." Officer Hemsted ordered Drew to turn around and put his hands behind his back. Drew refused. He began to say, "No. I am asking you—," but before he could finish, Officer Hemsted sprayed directly into one of his eyes from eight to ten inches away. Drew spun around, clutching his face, and the officers handcuffed him. He later pleaded guilty to second degree harassment, Iowa Code § 708.7(3).

Drew sued Officer Hemsted, Officer Ulin, the City of Des Moines, and its police chief under 42 U.S.C. § 1983 for, as relevant here, excessive force, failure to intervene, and *Monell*[2] liability. The district court found that Officer Hemsted's use of force was objectively reasonable and granted summary judgment to the defendants on all claims.

II.

We review the grant of summary judgment *de novo*, viewing the evidence in the light most favorable to Drew and drawing all reasonable inferences in his favor. *Johnson v. Carroll*, 658 F.3d 819, 825 (8th Cir. 2011). Summary judgment is appropriate if "there is no genuine dispute as to any material fact" and Officer Hemsted is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[2]*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Officer Hemsted is entitled to qualified immunity unless "(1) the facts demonstrate the deprivation of a constitutional or statutory right, and (2) the right was clearly established at the time of the deprivation." *De Mian v. City of St. Louis*, 86 F.4th 1179, 1182 (8th Cir. 2023). "We may resolve the appeal under only the clearly established prong of the analysis." *Irish v. McNamara*, ___ F.4th ___, ___ (8th Cir. 2024).

To be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates" it. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Because it can be difficult for an officer to "determine how the relevant legal doctrine, here excessive force, will apply to the factual situation [he] confronts," we define clearly established law with "specificity," asking "whether the violative nature of *particular* conduct is clearly established" in "the specific context of the case." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (citations omitted). Officers "are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam) (quoting *Mullenix*, 577 U.S. at 13). Relevant facts include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Drew hangs his hat on a series of cases that involved plaintiffs suspected of less severe crimes who posed a minimal risk of violence, so none "squarely governs the facts here." *Mullenix*, 577 U.S. at 15 (cleaned up). Take *Brown v. City of Golden Valley*, where an officer tased someone suspected of an open bottle violation "who was not fleeing or resisting arrest, who posed little to no threat to anyone's safety, and whose only noncompliance with the officer's commands was to disobey two orders to end her phone call to a 911 operator." 574 F.3d 491, 499 (8th Cir. 2009). Or *Peterson v. Kopp*, where an officer pepper sprayed a "non-fleeing, non-resisting, non-violent" suspect who refused to leave a public area, took out his cell phone, and asked for the officer's badge number. 754 F.3d 594, 599–601 (8th Cir. 2014). Or

*Johnson v. Carroll*, where an officer pepper sprayed and threw to the ground a woman who was "obstructing legal process" by "interjecting her body" between an arrestee and the officers—conduct we said was neither severe nor violent. 658 F.3d 819, 827 (8th Cir. 2011). Or even *Shannon v. Koehler*, where an officer took down a bar owner who "was not threatening anyone" or resisting arrest and it was unclear "whether [he] could reasonably have been suspected of committing *any* crime," let alone a serious one. 616 F.3d 855, 862–63 & 862 n.3 (8th Cir. 2010). In each of these cases, the plaintiff was at most suspected of a nonviolent misdemeanor and posed "a *minimal* safety threat." *Johnson*, 658 F.3d at 827 (emphasis added). None were about a severe crime involving threats of violence.

Nor was *Tatum v. Robinson,* though it gets closer. 858 F.3d 544 (8th Cir. 2017). There, an off-duty, plainclothes officer working security at a store approached Tatum, a suspected shoplifter. *Id.* at 546. He identified himself as a police officer and told Tatum that he was under arrest. *Id.* Within 14 seconds, the officer instructed him to put his hands on a clothes rack, warned him that he would use pepper spray if he did not calm down, sprayed him, and choked him. *Id*. at 546, 550. We noted that an officer "*may* act unreasonably" if he pepper sprays a suspect posing a "non-immediate safety threat[] . . . without warning," and that force is "least justified" against a "non-resisting, non-fleeing individual suspected of a completed, non-violent misdemeanor," like Tatum. *Id.* at 549–50 (emphasis added). We also said that because Tatum was "angrily arguing" and had "made no verbal threats or physical movements indicating a threat," he was noncompliant but not actively resisting arrest. *Id.* at 548–49. So we held that it was unreasonable for the officer to "immediately use significant force" without first "attempt[ing] to use other force to secure compliance." *Id.* at 550.

Drew's is a very different case. He had repeatedly harassed a woman, threatened to kill her and blow up the apartment building, and lunged at her and her one-year-old daughter while blocking them from leaving their home. And she wasn't his only target—Drew was a persistent problem in the building and had busted in another female neighbor's door. As the officers approached Drew's door,

they were told that he was likely under the influence and got up in people's space. They heard a woman screaming at Drew to get out of her way when they arrived, and they witnessed him threaten her as she fled. Plus, when Officer Hemsted grabbed Drew's arm and asked if he had any guns on him, he skirted the question and warned the officer that if he touched him "one more goddamn time" they would "have a problem."[3] He then refused to comply with Office Hemsted's order to turn around and put his hands behind his back. Drew's case differs from *Tatum* both in the severity of the suspected crime and the risk of violence. So *Tatum* does not "squarely govern" here. *Mullenix*, 577 U.S. at 15.

All said, it was not clearly established in June 2020 that an officer may not use pepper spray to arrest someone who is suspected of a serious crime, has made several violent threats, and is noncompliant. Officer Hemsted is entitled to qualified immunity.

### III.

Because it was not clearly established that Officer Hemsted's use of force violated Drew's Fourth Amendment rights, Officer Ulin was not "on fair notice that his failure to intervene" would be unconstitutional, so Drew's claim against Officer Ulin fails. *See Hollingsworth v. City of St. Ann*, 800 F.3d 985, 991 (8th Cir. 2015). For the same reason, the City and police chief "did not act with deliberate indifference by failing to train [their] officers that use of [pepper spray] in these circumstances was impermissible." *Id.* at 992.

---

[3]Drew attacks the district court's characterization of this statement as a "verbal threat," noting that he was calm when he said it and made no physically threatening movements. *See Tolan v. Cotton*, 572 U.S. 650, 658–59 (2014) (per curiam) (holding that it was error to construe plaintiff's words as a threat because "a jury could well have concluded that a reasonable officer would have heard ['Get your fucking hands off my mom'] not as a threat, but as a son's plea" (cleaned up)). But this statement is just one of several facts that make Drew's case, and the immediacy of his threat to officers, distinct from *Tatum*.

## IV.

The district court's judgment is affirmed. The motion to supplement the record with the bodycam footage is granted.

_____