# United States Court of Appeals

## For the Eighth Circuit

_____

No. 24-1114

_____

Adam Keup

*Plaintiff - Appellant*

v.

Sarpy County; Jeff Davis, Sarpy County Sheriff, in his official and individual
capacities; Jane or John Doe, Deputies, 1-4, in their individual capacities as
employees of Sarpy County

*Defendants*

Nicholas Palmer, Sarpy County Sheriff's Deputy, in his individual capacity as an
employee of Sarpy County

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: October 23, 2024
Filed: November 19, 2025

_____

Before GRUENDER, BENTON, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

During a protest following the death of George Floyd, Sarpy County Deputy Nicholas Palmer shot Adam Keup in the eye with a pepper ball, then took him behind police lines for medical treatment. Keup sued under 42 U.S.C. § 1983, alleging that Deputy Palmer violated his First and Fourth Amendments rights. The district court[1] granted summary judgment to Deputy Palmer based on qualified immunity. We affirm.

I.

These are the relevant facts, viewed in the light most favorable to Keup. *See Drew v. City of Des Moines*, 111 F.4th 881, 884 (8th Cir. 2024). Protestors gathered at the intersection of 72nd and Dodge streets in Omaha, Nebraska. When the protest became unruly and blocked traffic, it was declared an unlawful assembly and the crowd was ordered to disperse. The Sarpy County SWAT Team formed a skirmish line in a Walgreens parking lot.

Deputy Palmer was in the line and armed with a pepper ball gun, a non-lethal weapon that shoots projectiles filled with pepper powder. Sarpy County operating procedures allow use of the pepper ball gun to target people up to 30 feet away and to disperse crowds up to 100 feet.

Keup, his partner, and two friends were there to document the protest. The group stopped near the Walgreens so Keup's partner could take pictures. Keup stood on the sidewalk wearing a backpack with camera equipment inside while the other three were near the trees and bushes at the edge of the parking lot. Keup did not know that the crowd was ordered to disperse.

---

[1]The Honorable Brian C. Buescher, United States District Judge for the District of Nebraska.

Deputy Palmer fired his pepper ball gun at least two times at a nearby protestor, first hitting the ground and then the protestor, who left the area. Keup did not see the exchange. Deputy Palmer then fired twice at Keup, hitting him in the right eye. Keup immediately fell to the ground. Seeing this, Deputy Palmer and other officers rushed toward Keup, grabbed him, and took him behind the skirmish line for medical care. Officers told Keup he was not under arrest, but they did not allow his partner or friends to go with him. After being seen by a medic, Keup declined further treatment and his partner drove him to the emergency room. Keup has permanent vision loss in his right eye from the pepper ball.

## II.

We review *de novo* the district court's order granting summary judgment, viewing evidence in the light most favorable to Keup and drawing all reasonable inferences in his favor. *Drew*, 111 F.4th at 884. Summary judgment is appropriate if there is no genuine dispute as to any material fact and Deputy Palmer is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We will grant Deputy Palmer qualified immunity unless the facts demonstrate a deprivation of a constitutional right, and the right was clearly established at the time of the deprivation. *Drew*, 111 F.4th at 884.

## A.

The district court granted Deputy Palmer qualified immunity on Keup's First Amendment claim, finding that Keup was "merely observing rather than protesting, documenting, or participating in any assembly" and holding that the right to "merely observ[e] police" was not clearly established. On appeal, the parties contest whether Keup was just observing police or doing something more, like "aiding" his partner's recording of police. They also debate whether Keup was exercising a clearly established constitutional right to observe police. Keup argues the "right to observe and record police activity" was clearly established when he was shot in 2020.

To prove a First Amendment violation, Keup must point to evidence showing "(1) [he] engaged in protected expression, (2) [Deputy Palmer] took an adverse action that would chill a person of ordinary firmness from continuing the activity, and (3) there was a but-for causal connection between [Deputy Palmer's] retaliatory animus and [Keup's] injury." *De Mian v. City of St. Louis*, 86 F.4th 1179, 1182 (8th Cir. 2023) (citation omitted). His claim fails because the undisputed material facts do not support causation under the third element.

To establish but-for causation, "[i]t is not enough for the plaintiff to show that the defendant arrested or used force against the plaintiff in response to conduct that in fact was protected." *Mitchell v. Kirchmeier*, 28 F.4th 888, 896 (8th Cir. 2022). When an unlawful assembly has been declared, like here, a plaintiff must show that "[the officer] singled out [the plaintiff] from other protesters" and that his "First Amendment expression was the but-for cause of [the officer's] decision . . . to use force." *Nieters v. Holtan*, 83 F.4th 1099, 1110 (8th Cir. 2023).

Keup argues that Deputy Palmer specifically targeted him or singled him out from others at the scene. That is true, but not enough. Another officer pointed out Keup, and Deputy Palmer shot him. But immediately before that, the other officer pointed out another protestor, who was not holding a backpack or otherwise "aiding" the recording of police, and Deputy Palmer shot him, too. So even though Keup was targeted, there is no reasonable inference that Deputy Palmer singled him out because of his First Amendment activity.

The broader context, and Keup's own characterization of what happened, bolsters our conclusion. Keup says that at the time he was shot he was "standing idly," "serving as another set of eyes and ears" for his partner, not holding anything in his hands, and carrying photography equipment in a backpack. Assuming this is true and accepting for the sake of argument that Keup was engaged in protected expression, there is nothing about what Keup was doing that would inform a reasonable officer that he was exercising a First Amendment right. He has not alleged, for example, that he identified himself as "press," that he was actively

-4-

recording officers or assisting his partner doing that, or that he was visibly doing anything at all to separate him from anyone else near the Walgreens. *See, e.g., Quraishi v. St. Charles Cnty.*, 986 F.3d 831, 838 (8th Cir. 2021) (qualified immunity denied where "other people were in their immediate area but only the reporters were tear-gassed at the scene."). When Deputy Palmer fired at him, Keup was just standing there—whatever his motives and purpose might have been. Because Keup has "failed to show the causal connection between his protected expression and [Deputy Palmer's] adverse action," a reasonable jury could not find a constitutional violation. *Nieters*, 83 F.4th at 1110.

## B.

Next, Keup argues his Fourth Amendment rights were violated when Deputy Palmer used excessive force by shooting him with pepper balls and unreasonably seized him by grabbing him and taking him behind the skirmish line. Whether a Fourth Amendment seizure occurred is a threshold question to establish a violation. *Dundon v. Kirchmeier*, 85 F.4th 1250, 1255 (8th Cir. 2023). To constitute a seizure, the challenged conduct must "objectively manifest[] an intent to restrain." *Torres v. Madrid*, 592 U.S. 306, 317 (2021). And because qualified immunity is at issue, Keup must show that it was clearly established that what happened to him was a seizure. *Dundon*, 85 F.4th at 1255.

The district court concluded that Keup failed to point to evidence that Deputy Palmer used the pepper ball gun to apprehend, rather than disperse, so his Fourth Amendment rights for that claim were not clearly established. The court also found that it was not clearly established that Keup was seized when he was brought behind the skirmish line for medical attention. We agree on both points.

We "have recognized a potential distinction between force used with intent to apprehend and force used with intent to disperse or repel." *Id.* at 1256. Although we have not been explicit about how we decipher the officer's purpose when using force, we generally consider it a seizure when some force (other than deadly force)

is used in conjunction with "apprehend[ing] a suspect." *Id.* (collecting cases). What matters is whether "[t]he record demonstrates that [the officer] applied force to restrain" or to disperse. *Marks*, 107 F.4th at 846; *see also Dundon*, 85 F.4th at 1255–56. For example, in *Marks*, an officer "aimed [at] and shot" a protester with a pepper ball equivalent from five to ten feet away. 107 F.4th at 845. Because the officer "expressly testified he used force to restrain [the protestor's] movement" and the officer "achieved the result . . . intended," the plaintiff showed it was a seizure. *Id.* at 845–46. But in *Dundon*, firing tear gas, rubber bullets, and lead-filled bean bags used to disperse protesters was not a clearly established seizure. *See* 85 F.4th at 1254–55.

The evidence here shows that Deputy Palmer fired at Keup to disperse, not to seize. Deputy Palmer testified that he shot "intending it to strike in front of [Keup] on the sidewalk as a crowd dispersal tool." Other evidence suggests the same. No one, including Keup, his partner, nor his friends, was arrested. And immediately prior to shooting Keup, Deputy Palmer fired at another protestor, who dispersed. Finally, Keup was outside of the range where the pepper ball gun was supposed to be used for targeting.

The district court was also correct that Keup was not unreasonably seized when officers surrounded him and moved him behind the skirmish line for medical treatment. Our inquiry "is fact intensive and turns on the unique facts of [this] case." *United States v. Griffith*, 533 F.3d 979, 983 (8th Cir. 2008). While Keup argues that the officers' hands on him felt like a "control measure" and that he "did not believe [he] was free to leave," a seizure does not "depend on the subjective perceptions of the seized person." *Torres*, 592 U.S. at 317. Rather, we look to Deputy Palmer's conduct and consider whether "a reasonable person would have believed that he was not free to leave." *Quraishi*, 986 F.3d at 839 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). This objective standard "ensures that the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual being approached." *United States v. Grant*, 696 F.3d 780, 784 (8th Cir. 2012) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 574 (1988)).

When the officers took Keup behind the police line, they "physical[ly]" grabbed him. But when Keup asked whether he was "being arrested or detained," the officers responded, "No." *See Oglesby v. Lesan*, 929 F.3d 526, 533 (8th Cir. 2019) (finding no seizure when officer did not, among other things, "threaten [plaintiff] with arrest"). They took Keup behind police lines to provide medical aid, provided it, and then told him he was free to go to the hospital by himself. *See id.* (officer "did nothing to stop him from leaving"). All told, we do not think that Deputy Palmer objectively manifested an intent to restrain Keup and so his Fourth Amendment rights were not violated.

## III.

The judgment of the district court is affirmed.

_____