# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-3388
_____

Micah B. Riggs

*Plaintiff - Appellee*

v.

Robert Gibbs, in his official capacity as a Kansas City, Missouri Police Department Officer, and, as an individual; David Barbour, in his official capacity as a Kansas City, Missouri Police Department Officer, and, as an individual; Michael Feagans, in his official capacity as a Kansas City, Missouri Police Department Officer, and, as an individual; Alan Whaley, in his official capacity as a Kansas City, Missouri Police Department Officer, and, as an individual; Brad Dumit, in his official capacity as a Kansas City, Missouri Police Department Officer, and, as an individual; Chris Onik, in his official capacity as a Kansas City, Missouri Police Department Officer, and, as an individual; Teddy Taylor, in his official capacity as a Kansas City, Missouri Police Department Officer, and, as an individual; Christopher Toigo, in his official capacity as a Kansas City, Missouri Police Department Officer, and, as an individual

*Defendants - Appellants*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: November 13, 2018
Filed: May 8, 2019
_____

Before GRUENDER, KELLY, and GRASZ, Circuit Judges.
_____

KELLY, Circuit Judge.

Micah Riggs's businesses were searched three times by the Kansas City Police Department (KCPD). He sued under 42 U.S.C. § 1983 for alleged Fourth and Fourteenth Amendment violations as well as various common law causes of action. Among others, Detective Robert Gibbs, Detective Chris Onik, Sergeant Brad Dumit, Detective Teddy Taylor, Detective Christopher Toigo, Officer Michael Feagans, and Officer David Barbour of the KCPD sought summary judgment on the basis of qualified immunity, which the district court[1] granted in part and denied in part. The officers now appeal the district court's order denying qualified immunity. We dismiss for lack of jurisdiction.

I

A

We draw the following background facts from the district court's summary judgment opinion, which we must accept as true for purposes of deciding this appeal. See Burnikel v. Fong, 886 F.3d 706, 709 (8th Cir. 2018) ("[W]e accept as true the facts that the district court found were adequately supported, as well as the facts that the district court likely assumed, to the extent they are not 'blatantly contradicted by the record.'" (quoting Thompson v. Murray, 800 F.3d 979, 983 (8th Cir. 2015))). Riggs owned two businesses, Coffee Wonk and Wonk Exchange, on the first floor of 3535 Broadway, Kansas City, Missouri. Coffee Wonk was located at 3535D Broadway and Wonk Exchange at 3535A Broadway. Riggs also rented another unit, Suite 201, on the second floor.

---

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

On September 27, 2010, Officers Barbour and Feagans received a burglary call from the owner of Suite 200 at 3535 Broadway. When they arrived, they investigated the burglary, but were unable to find the burglar. They met Christopher Long, the building manager, who accompanied Officer Barbour as he began to search the second floor. Long opened the door to Suite 201, although there were no signs of prior entry. After Long opened the door, Officer Barbour saw lab equipment in Suite 201. Officer Barbour did not see anything that led him to believe that the lab was illegal or an active meth lab, but he did recognize chemicals marked with a skull and cross bones, which he believed were dangerous. He and Officer Feagans then asked Metro Meth Drug Task Force to process the lab, which it did without Riggs's consent. Items were seized from Suite 201.

That same day, Detective Toigo received a call that a robbery had occurred at Coffee Wonk. When he arrived, he interviewed the Coffee Wonk store clerk and began processing the scene. He looked behind the counter for fingerprints. He also went to the parking garage adjacent to the building, where he found some Syn brand incense. He called Detective Taylor, who then arrived at the scene with Detective Acton. At some point, Detective Toigo showed Detective Taylor packages of Syn incense located behind the counter at Coffee Wonk. They did not immediately know whether the Syn incense was illegal. Riggs also arrived at Coffee Wonk. Detectives Toigo, Taylor and Acton seized Syn incense from behind the Coffee Wonk counter.

B

In 2012, Gary Majors, manager of the city authority in charge of regulating liquor licenses, received a tip that a business at 35th and Broadway with "coffee" in its name was selling K2, a synthetic cannabinoid. Majors searched the electronic database and determined that an establishment named "Coffee Wonk" at 3535 Broadway had a liquor license. At Majors's instruction, an employee e-mailed Sergeant Dumit and explained that Majors had received a complaint regarding K2

sales at Coffee Wonk, an establishment that sells alcohol. Some time later, Majors realized that Coffee Wonk did not have a liquor license, but he made no effort to inform KCPD of his mistake.

On October 3, 2012, Detective Whaley entered Coffee Wonk to attempt a controlled buy. He asked for either Mr. Happy or Mr. Green. The clerk explained that Coffee Wonk did not have either of these brands of incense and sold him Remix, which was stored under the counter and out of sight. Detective Whaley believed the item he purchased was contraband because of its packaging and the way it was sold. Shortly after Detective Whaley purchased the Remix, Detectives Onik and Gibbs entered Coffee Wonk. Sergeant Dumit followed them. Detective Gibbs could not see the Remix supply until he went behind the counter near the register, at which point he seized all that he found. Detective Gibbs also seized an envelope full of money, which included the money Detective Whaley used to buy the Remix. Detective Onik seized Remix found in a back room.

C

On August 1, 2014, Riggs brought suit against the officers involved in the 2010 search and the 2012 raid, claiming that both warrantless searches violated his rights under the Fourth Amendment. On February 2, 2017, the officers moved for summary judgment on the basis of qualified immunity, which the district court granted in part and denied in part. As is relevant to this appeal, the district court concluded that Officers Barbour and Feagans were not entitled to summary judgment as to liability arising out of the 2010 search and seizure of items in Suite 201 because questions of material fact exist as to whether Long had Riggs's consent to open the door to Suite 201 and whether the police officers could have reasonably believed that they had consent to search Suite 201. The district court also concluded that Detectives Toigo and Taylor were not entitled to summary judgment as to liability arising out of the 2010 seizure of incense from behind the Coffee Wonk counter because questions of

material fact exist as to whether they had consent or reasonably believed they had consent to seize the incense. Finally, the district court determined that Detectives Whaley, Gibbs, and Onik and Sergeant Dumit were not entitled to summary judgment because questions of material fact exist as to the purpose of the 2012 search and whether it was reasonable for defendants to believe that Coffee Wonk had a liquor license once the search began. The officers appeal.

II

"An order denying qualified immunity can be immediately appealable despite the fact that it is interlocutory." Mallak v. City of Baxter, 823 F.3d 441, 445 (8th Cir. 2016). Qualified immunity shields public officials from § 1983 liability "unless (1) the evidence, viewed in the light most favorable to [the plaintiff], establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation, such that a reasonable official would have known that his actions were unlawful." Blazek v. City of Iowa City, 761 F.3d 920, 922–23 (8th Cir. 2014). "Our jurisdiction to consider an appeal of an order denying summary judgment based on qualified immunity is limited to the purely legal issue of whether the facts alleged support a claim of violation of clearly established law." Berry v. Doss, 900 F.3d 1017, 1021 (8th Cir. 2018) (cleaned up). We do "not have jurisdiction to consider the appeal if 'at the heart of the argument is a dispute of fact.'" Austin v. Long, 779 F.3d 522, 524 (8th Cir. 2015) (quoting Pace v. City of Des Moines, 201 F.3d 1050, 1053 (8th Cir. 2000)); see also Berry, 900 F.3d at 1021 ("[D]efendants that have been denied qualified immunity cannot create appellate jurisdiction by using qualified immunity verbiage to cloak factual disputes as a legal issue."). If defendants are "simply arguing that the plaintiff offered insufficient evidence to create a material issue of fact" for trial, we lack jurisdiction. White v. McKinley, 519 F.3d 806, 813 (8th Cir. 2008).

We conclude that we lack jurisdiction over Officers Barbour and Feagans' appeal. They claim that they are entitled to qualified immunity against any liability arising out of the warrantless search and seizure of items in Suite 201 because Riggs put forth insufficient evidence to dispute that Long represented to Officer Barbour that he had authority to open the door. They concede that the legality of the search and seizure — and thus their qualified-immunity defense — depends entirely on Long's apparent authority to open the door. The district court concluded that "questions of material fact exist as to whether Long had plaintiff's consent to open the door and whether the police officers could have reasonably believed they had consent to search the premises." We lack jurisdiction to consider these genuine disputes of material fact. See Wallace v. City of Alexander, 843 F.3d 763, 766 (8th Cir. 2016) ("[I]ssues such as 'the existence, or nonexistence, of a triable issue of fact' are not reviewable" at this juncture. (quoting Johnson v. Jones, 515 U.S. 304, 316 (1995))).

We similarly lack jurisdiction to consider Detectives Toigo and Taylor's appeal. They argue that they are entitled to qualified immunity in connection with the 2010 seizure of Syn incense from behind the Coffee Wonk counter because the incense was in "plain view." Under the plain-view doctrine, "officers may seize an object without a warrant if they are lawfully in a position from which they view the object, the incriminating character of the object is immediately apparent, and the officers have a lawful right of access to the object." United States v. Brown, 635 F.3d 656, 661 (8th Cir. 2011) (quoting United States v. Muhammad, 604 F.3d 1022, 1027 (8th Cir. 2010)). Consent may provide the basis for lawful presence and lawful access to the item seized. See, e.g., PPS, Inc. v. Faulkner Cty., 630 F.3d 1098, 1103–05 (8th Cir. 2011) (plain-view doctrine supported seizure where pawn shop manager consented to officer's presence). "Once given, [however,] consent to search may be withdrawn." United States v. Sanders, 424 F.3d 768, 774 (8th Cir. 2005).

The parties do not dispute that the Syn incense would have been in plain view when Detective Toigo first passed behind the counter during the course of his robbery investigation. The parties also agree that the Coffee Wonk store clerk's consent to investigate the robbery gave Detective Toigo a lawful right of access to the area behind the counter at that time. But Detective Toigo did not seize the Syn incense during his initial search, and the factual circumstances surrounding the later seizure of the Syn incense are heavily disputed. Accepting Riggs's version of the events as true, he unequivocally withdrew consent to seize the Syn incense located behind the counter and the seizure was accordingly unlawful. See Sanders, 424 F.3d at 774–77. Analyzing the factual record to resolve these genuine factual disputes would exceed the scope of our limited review. See Berry, 900 F.3d at 1021.

Finally, we lack jurisdiction over Sergeant Dumit and Detectives Whaley, Gibbs, and Onik's appeal. The officers argue that they are entitled to qualified immunity against liability arising out of the 2012 warrantless search of Coffee Wonk because Riggs did not make a substantial showing that the administrative search exception does not apply. A warrantless administrative search "is constitutional if . . . the rules governing the search offer an adequate substitute for the fourth amendment warrant requirement." United States v. Knight, 306 F.3d 534, 535 (8th Cir. 2002). However, the officers concede that this exception does not apply when the administrative search is a mere subterfuge for criminal investigation. See Ashcroft v. al-Kidd, 563 U.S. 731, 736 (2011) (noting that in administrative-search cases "'actual motivations' do matter") (quoting United States v. Knights, 534 U.S. 112, 122 (2001)). On appeal, they ask this court to disregard the district court's determination that Riggs "presented substantial facts supporting his argument that there was no real 'dual purpose' for this search" and, instead, conclude that Riggs has presented insufficient evidence that the search was not at least in part a "tavern check" in order to defeat summary judgment. But this kind of "fact-intensive argument[] amount[s] to nothing more than [a] prohibited 'I didn't do it!'" defense. Heartland Acad. Cmty. Church v. Waddle, 595 F.3d 798, 807 (8th Cir. 2010)

-7-

Therefore this factual argument, too, is beyond our limited review. <u>See</u> <u>Wallace</u>, 843 F.3d at 766.

Because material disputes of fact are at the heart of the officers' appeal, we dismiss for lack of jurisdiction.

_____