# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-3358

_____

Crystal Thompson; Z.T., by and through his next friend Crystal Thompson; Tyler Hutson; G.T., III, by and through his next friend Marinda Hayden; S.T., by and through her next friend Marinda Hayden; T.T., by and through her next friend Marinda Hayden; Gerald Thompson; Mary Estrada

*Plaintiffs - Appellees*

v.

Andrew Dill

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Southern Division

_____

Submitted: November 14, 2018
Filed: July 23, 2019

_____

Before GRUENDER, KELLY, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

This interlocutory appeal is about whether Trooper Andrew Dill of the Missouri Highway Patrol is immune from a lawsuit filed against him for shooting and killing Gerry Thompson during Dill's response to a serious domestic disturbance.

The district court denied Dill's motion for summary judgment, concluding there were genuine issues of material fact in dispute preventing it from concluding Dill was entitled to his asserted immunity defenses. Because Dill's appeal turns on disputed issues of fact as to what occurred before the shooting, we lack jurisdiction and dismiss.

## I. Background[1]

On May 4, 2016, law enforcement officers were dispatched to Gerry and Crystal Thompson's residence. The radio dispatcher reported that a male had assaulted Crystal and was now holding her and a small child against their will. The dispatcher reported the man — who was later identified as Crystal's husband Gerry — threatened to kill Crystal if police came to the house. Dill and other law enforcement officers from various departments responded to the call.

Dill arrived at the residence and stationed himself in a neighboring yard to the east of the Thompson residence. The record reveals that another officer, Dallas County Deputy Sheriff Darren Cheek, conversed with Gerry at the front door entryway and ultimately employed his taser against Gerry. The taser did not subdue Gerry, and Gerry tried to push Cheek out of the entryway and close the door. Dill testified the sound of the taser combined with the fact Cheek staggered backward led Dill to believe Gerry had shot the officer. Dill then observed Cheek and several other officers forcibly enter the home.

---

[1]We recite the background facts primarily as set forth in the district court's summary judgment opinion. *See Riggs v. Gibbs*, 923 F.3d 518, 521 (8th Cir. 2019) (explaining we must accept as true the facts the district court found were adequately supported unless they are blatantly contradicted by the record). Certain additional undisputed facts are gleaned from the record.

While Gerry and the officers were inside, Dill walked toward the residence and looked in the front door, where he observed Crystal, with blood on her face, holding a child. Dill heard screaming, yelling, and banging inside the house and concluded Gerry was not under police control and that Crystal and her child were in danger.

Gerry soon charged out a separate door. Almost immediately and without giving any warning to Gerry, Dill discharged his firearm a single time, fatally shooting Gerry in his right side. Dill testified he saw Gerry move his hands toward his waistband and turn back toward the door, which Dill said caused him to believe Gerry was reaching for a gun to possibly shoot into the house. Gerry was actually unarmed. A video taken by Deputy Cheek's body camera inside the house showed Gerry rushing out of the house and slamming the door shut. Although the door prevented recording video of the actual shooting, the audio of the shooting was recorded.

Gerry's children and parents and Crystal sued Dill in federal court. The complaint alleged excessive force in violation of 42 U.S.C. § 1983 and a Missouri state law claim of battery.

After discovery, Dill filed a motion for summary judgment, claiming he was entitled to qualified immunity on the excessive force claim and official immunity on the battery claim. The essence of Dill's argument was that his decision to use deadly force was reasonable under the circumstances involved, including because Dill believed Gerry posed a threat to others considering he "disobeyed commands and fled from officers, only to immediately turn back toward them, while reaching to his waistband."

The district court denied Dill's motion for summary judgment, concluding a genuine issue of material fact was in dispute as to whether Gerry acted in a way that made it objectively reasonable to believe he posed an immediate threat to officers or

others at the scene. The district court explained the body-camera video "shows only the view from inside the residence, such that the shooting at issue and the actions of Dill and [Gerry] occurred on the other side of an opaque door." Thus, the district court reasoned it could not "conclude that [Gerry] reached for his waist, or otherwise behaved in a manner that would have justified the perception that [Gerry] was behaving in a threatening manner."

As for the battery claim, the district court denied Dill official immunity. The district court credited the Plaintiffs' arguments that there were open fact questions as to whether Dill acted maliciously since Dill shot Gerry almost immediately upon leaving the house and, contrary to his officer training, without first giving Gerry any verbal warning.

Dill filed a timely interlocutory appeal, challenging the district court's denial of his motion for summary judgment on both the § 1983 excessive force claim and the Missouri battery claim.

## II. Analysis

Summary judgment is proper if a party "shows that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When engaging in this analysis, "the nonmoving party is given the benefit of all reasonable inferences." *Morgan v. Cook*, 686 F.3d 494, 496 (8th Cir. 2012).

In cases where a government official seeks summary judgment on the basis of qualified immunity, the court must engage in a two-step inquiry. *See id.* A government official is entitled to qualified immunity on a § 1983 claim unless (1) "the facts shown by the plaintiff make out a violation of a constitutional or statutory

right," and (2) the "right was clearly established at the time of the defendant's alleged misconduct." *Id.*

Typically, we do not have jurisdiction over a district court's denial of summary judgment. When the denial is based on qualified immunity, however, we have limited jurisdiction to decide the purely legal issue of whether the alleged facts support a claim of violation of clearly established law. *See Raines v. Counseling Assocs. Inc.*, 883 F.3d 1071, 1074 (8th Cir. 2018). The standard of review to reach that particular question is de novo. *See id.*

Our jurisdiction does not extend to the issue of "whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 320 (1995). Consequently, we generally do not have jurisdiction to review a district court's denial of qualified immunity at the summary judgment stage simply because we disagree with the district court as to whether there is sufficient evidence to conclude a material fact is genuinely in dispute. *See Riggs v. Gibbs*, 923 F.3d 518, 523 (8th Cir. 2019). Jurisdiction is thus typically lacking where there is a dispute of fact "at the heart of the argument." *Id.* (quoting *Austin v. Long*, 779 F.3d 522, 524 (8th Cir. 2015)).

There is an exception to this rule. Reversal of a denial of qualified immunity is warranted "where the record plainly forecloses the district court's finding of a material factual dispute." *Raines*, 883 F.3d at 1074; *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Similarly, we have limited jurisdiction to review issues of law related to the district court's denial of summary judgment based on Dill's official immunity

-5-

defense. *See Div. of Emp't Sec., Mo. v. Bd. of Police Comm'rs*, 864 F.3d 974, 978 (8th Cir. 2017) (recognizing the "scope of review is limited to issues of law," which are reviewed de novo, as to denials of claims of qualified immunity, sovereign immunity, and official immunity).

## A. Section 1983 Excessive Force Claim

With our jurisdictional limitations in mind, we first consider the district court's denial of qualified immunity to Dill on the § 1983 excessive force claim. An excessive force claim "is governed by the Fourth Amendment's prohibition against unreasonable seizures." *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012). In deciding whether an officer's use of force amounts to a constitutional violation, the question turns on whether, under the totality of the circumstances, the officer's conduct was reasonable. *See Graham v. Connor*, 490 U.S. 386, 395–96 (1989); *Raines*, 883 F.3d at 1074.

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. Courts therefore must not make immunity conditional on the government officer's "pursu[ing] the most prudent course of conduct as judged by 20/20 hindsight vision." *Morgan*, 686 F.3d at 497.

We have identified certain factors as relevant to determine if an officer's use of force was objectively unreasonable:

the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Zubrod v. Hoch*, 907 F.3d 568, 577 (8th Cir. 2018).

Our jurisprudence on the use of deadly force is particularly relevant here. We have held it is not constitutionally unreasonable to use deadly force "if an officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others." *Morgan*, 686 F.3d at 497. This is true even if the officer's objectively reasonable belief or perception about the threat turns out to be mistaken. *See Loch*, 689 F.3d at 966. So "[e]ven if a suspect is ultimately 'found to be unarmed, a police officer can still employ deadly force if objectively reasonable.'" *Id.* (quoting *Billingsley v. City of Omaha*, 277 F.3d 990, 995 (8th Cir. 2002)). But where it is *not* objectively reasonable for an officer to believe a suspect poses an immediate threat to the officer or others, "deadly force is not justified." *See Raines*, 883 F.3d at 1074 (quoting *Ellison v. Lesher*, 796 F.3d 910, 916 (8th Cir. 2015)).

Since there is no dispute Gerry was unarmed when Dill shot and killed him, the critical question is this: viewing the evidence in the light most favorable to the Plaintiffs, was it objectively reasonable for Dill to believe Gerry posed a threat of serious physical harm to anyone as he fled from his house? If so, then Dill is entitled to qualified immunity and thus summary judgment. If not, then the case must proceed to trial.

The district court answered this question in the negative, reasoning that under the summary judgment standard it could not conclude Gerry "reached for his waist, or otherwise behaved in a manner that would have justified the perception that [Gerry] was behaving in a threatening manner." Dill argues this was error because,

-7-

at the moment he employed deadly force, he had reason to believe Gerry was about to cause death or serious bodily injury to the officers inside the residence by reaching for a gun to shoot back into the house at the officers. Dill contends this belief was reasonable considering the totality of the circumstances, including the fact Gerry reached for his waist and turned back toward the officers inside the house.

Dill may ultimately be able to show his split-second decision to shoot Gerry was objectively reasonable considering the chaotic circumstances. But we do not have jurisdiction to decide whether or not we disagree with the district court as to whether there was sufficient evidence to find a genuine issue of material fact for resolution at trial. *See Johnson*, 515 U.S. at 319–20. That question is beyond our limited jurisdiction unless Dill can show the record plainly forecloses the district court's finding that a material factual dispute existed as to whether Gerry was acting in a threatening manner. *See Raines*, 883 F.3d at 1074.

Dill cannot show such a one-sided record here. It is true nothing in the record *directly* contradicts Dill's testimony that Gerry reached for his waistband and turned back toward the door as he exited. At the same time, there is evidence that could indicate Gerry did not act as Dill described. For example, the body-camera recording[2] taken from inside the house demonstrates that Dill shot Gerry *immediately* upon

_____

[2]Dill argues the district court's decision relied on the faulty premise that to prevail on summary judgment an officer's testimony must be confirmed by video. Dill correctly points out there is no such requirement in the law. However, we do not interpret the district court's order as imposing such a rule. Instead, read in context, the district court simply concluded the body camera video did not resolve the factual dispute as to how Gerry behaved as he fled the house. In other words, because the body camera video did not show the shooting, the district court concluded it did not warrant discrediting the Plaintiffs' version of events at the summary judgment stage as permitted in appropriate circumstances. *See Scott*, 550 U.S. at 380–81, 386 (reversing a denial of qualified immunity in an excessive force case where the facts depicted by the videotape utterly discredited the plaintiff's version of events).

exiting the house.  Considering this, one could question whether Gerry even had time to reach toward his waist and turn back toward the house.[3]  There are also photographs and an autopsy report in the record clearly showing the entry wound was on Gerry's right side, which Plaintiffs argue casts doubt on whether Gerry turned back to the house as Dill testified.[4]

This evidence does not necessarily mean it was unreasonable for Dill to believe Gerry posed a threat justifying his use of deadly force.  But it does mean the record does not plainly foreclose the district court's finding of a factual dispute as to whether Gerry's actions just prior to the shooting were consistent with Dill's testimony.  And resolution of whether the evidence is sufficient to make that dispute "genuine" is beyond our limited jurisdiction.  *See Johnson*, 515 U.S. at 319–20.

### B.  Missouri Battery Claim

We next review the district court's denial of summary judgment on the battery claim, as to which Dill asserts he is entitled to official immunity.

"Under the Missouri doctrine of official immunity, 'public officers acting within the scope of their authority are not liable for injuries arising from their discretionary acts or omissions, but they may be held liable for torts committed when acting in a ministerial capacity.'" *Div. of Emp't Sec., Mo.*, 864 F.3d at 979 (quoting *Missouri ex rel. Hill v. Baldridge*, 186 S.W.3d 258, 259 (Mo. 2006) (en banc) (cleaned up)).  An officer's actions when interacting with "a suspected criminal are

---

[3]The video does not show Gerry reaching for his waist before the door closed.

[4]The autopsy photos and report indicate the point of entry of the shotgun pellets to be on the right side of Gerry's body, which was the side nearest to Dill when Gerry exited the house.  Plaintiffs argue that if Gerry had turned as Dill described, the entry wounds would have been expected "in the center/belly button."

generally discretionary, and thus they are protected by official immunity." *Id.* This includes when a police officer "draws and fires a weapon." *Seiner v. Drenon*, 304 F.3d 810, 813 (8th Cir. 2002).

However, acts performed in bad faith or with malice do not qualify as discretionary acts. *See Conway v. St. Louis Cnty.*, 254 S.W.3d 159, 165 (Mo. Ct. App. 2008). "Bad faith signifies a dishonest purpose or conscious wrongdoing or breach of a known duty through ulterior motives or ill will." *Id.* "Malice [] requires intent, [and t]o act with malice the officer must do that which a man of reasonable intelligence would know to be contrary to his duty and intend such action to be injurious to another." *Id.*

Under our limited review, we do not have jurisdiction to reverse the district court's determination that there were open fact questions as to whether Dill acted maliciously. Dill shot Gerry immediately and, contrary to his training, without warning, when Gerry fled the house. Further, the autopsy photographs and report raise doubt as to Dill's claim that Gerry turned back toward the door. Considering those facts, and discounting Dill's testimony that Gerry reached for his waist and acted in a threatening manner, "a jury could find that [Dill] acted with the prohibited . . . malice." *Div. of Emp't Sec., Mo.*, 864 F.3d at 980. Once again, Dill may very well show his actions were reasonable and consistent with his duty, but we have no basis to decide that factual question under our limited jurisdiction.

### III. Conclusion

We dismiss the appeal for lack of jurisdiction.

KELLY, Circuit Judge, concurring.

I concur in the court's opinion, but mindful of our lack of jurisdiction over Dill's appeal, I would offer no comment on the likelihood of what either party ultimately may be able to show with respect to whether Dill's actions were reasonable.

_____