# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3058
_____

Gary Jacobsen, Individually; Auto One, Inc., A Nebraska Corporation,

*Plaintiffs - Appellants*,

v.

Michael Klinefelter, Individually and as a Cass County Deputy,

*Defendant - Appellee.*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: November 17, 2020
Filed: March 30, 2021
_____

Before COLLOTON, ARNOLD, and KELLY, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Gary Jacobsen refused to depart an automobile auction after a deputy sheriff believed that he observed Jacobsen trespassing in a restricted area and directed him to leave. When the deputy, Michael Klinefelter, grabbed Jacobsen's arm to escort him out of the building, Jacobsen shoved Klinefelter away. Klinefelter then warned Jacobsen that he must leave or face an increased use of force, and the deputy

eventually deployed pepper spray against a defiant Jacobsen. Jacobsen seized the spray canister from Klinefelter and a further altercation ensued. Officers eventually subdued Jacobsen and led him out of the building in handcuffs.

Jacobsen later sued Klinefelter, alleging an unreasonable seizure under the Fourth Amendment and state-law torts of battery and negligent infliction of emotional distress. The district court[1] granted summary judgment for Klinefelter, concluding that he was entitled to qualified immunity on Jacobsen's federal claim and official immunity under Missouri law on the tort claims. We affirm.

I.

The Auto Dealers Exchange Services of America hosted an auction in Belton, Missouri, on June 27, 2017. The auction sponsor contracted with the sheriff's office to provide security, and Klinefelter signed up to work the event. Klinefelter was engaged in "extra-duty employment," which is defined by the sheriff's office as "employment that is conditioned on the actual or potential use of law enforcement powers."

When Jacobsen entered the auction house, he encountered Klinefelter, and there was a dispute about whether Jacobsen displayed a proper access badge. Klinefelter eventually allowed Jacobsen to enter, but Jacobsen cursed at the deputy as he walked past. Klinefelter then blocked Jacobsen's path and explained that he could have Jacobsen removed from the event.

Jacobsen asked to see a manager of the auction. Klinefelter accompanied Jacobsen as he searched the premises for a person of authority. When Jacobsen

---

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

-2-

walked up a ramp into an area that was marked "RESTRICTED AREA - AUTHORIZED PERSONNEL ONLY," Klinefelter grabbed Jacobsen and told him he was trespassing. Jacobsen pulled away from Klinefelter, but Klinefelter started to push Jacobsen down the ramp and directed him to leave.

Shortly thereafter, the situation escalated. When Jacobsen still refused to depart, Klinefelter attempted to grab Jacobsen and escort him out. Jacobsen responded by shoving Klinefelter off. According to Jacobsen's testimony: "[Klinefelter] had both his hands on my right arm trying to physically remove me; *I shoved him off* because I had just had a vasectomy and I told him." R. Doc. 41-13, at 9 (emphasis added). Consistent with Jacobsen's admission, a video recording of the encounter shows Klinefelter lurching backward shortly before he raises a canister of pepper spray. Exh. V, at 5:40-5:42.

Klinefelter then warned Jacobsen that he would use pepper spray if Jacobsen did not leave. When Jacobsen refused to go, Klinefelter directed pepper spray at Jacobsen's face. Klinefelter testified that the spray malfunctioned and did not have its intended effect. Jacobsen claims that Klinefelter then came forward and placed the pepper spray canister against his face in an attempt to spray directly into his eyes. Before Klinefelter could spray a second time, however, Jacobsen gained control of the canister and fought with Klinefelter. Klinefelter struck Jacobsen in the head; Jacobsen pinned Klinefelter against a wall.

A second deputy arrived to find Jacobsen resisting Klinefelter's attempts to subdue him. The two officers wrestled Jacobsen to the ground, placed him in handcuffs, and escorted him from the building. Paramedics flushed Jacobsen's eyes with water at the scene, and he required no other medical treatment.

The county prosecutor charged Jacobsen with assault of a law enforcement officer, resisting arrest, and trespassing. The case was resolved through a plea bargain in which Jacobsen pleaded guilty to a reduced charge of disturbing the peace.

Jacobsen then sued Klinefelter, alleging that the deputy used excessive force against him, in violation of 42 U.S.C. § 1983 and the Fourth Amendment's proscription of unreasonable seizures. Jacobsen also asserted state-law claims of battery and negligent infliction of emotional distress.

The district court granted summary judgment for Klinefelter. The court concluded that Klinefelter did not violate a clearly established right of Jacobsen's under the Fourth Amendment and was therefore entitled to qualified immunity on the excessive force claim. The court also determined that Klinefelter was entitled to official immunity under Missouri law on Jacobsen's tort claims, because there was insufficient evidence that Klinefelter acted in bad faith or with malice. Jacobsen appeals the dismissal of those claims.

II.

Taking the § 1983 claim first, the question is whether Klinefelter is entitled to qualified immunity for his use of force against Jacobsen. To overcome a defense of qualified immunity, Jacobsen must show that the evidence would support a finding that Klinefelter violated Jacobsen's rights under the Fourth Amendment, and that the right was clearly established at the time of the incident. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

A right is clearly established if a reasonable officer would understand that his conduct violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Existing authority must place "the constitutionality of the officer's conduct 'beyond

-4-

debate.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

"The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (internal quotation marks omitted). "Such specificity is especially important in the Fourth Amendment context, where . . . it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id.* (internal quotation marks and brackets omitted). "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) (internal quotation marks omitted).

At the time of the disputed use of force, Klinefelter had probable cause to believe that Jacobsen was trespassing. Although Jacobsen denies that he entered a restricted space, he does not dispute that a sign marked the area up the ramp as a "restricted area" for "authorized personnel only," or that management told Klinefelter that it was a restricted area. When Jacobsen went up the ramp, Klinefelter reasonably believed that Jacobsen was trespassing. *See* Mo. Rev. Stat. § 569.140.

Jacobsen then resisted Klinefelter's efforts to remove him from the premises. Klinefelter sought to control Jacobsen by grabbing his arm to escort him out of the building, but Jacobsen shoved him off. Even if Klinefelter was mistaken about trespassing, Jacobsen had no right to resist the officer's show of authority. *See* Mo. Rev. Stat. § 575.150.4. Jacobsen's physical resistance gave Klinefelter probable cause to believe that Jacobsen committed another offense by unlawfully resisting arrest or detention. *See id.* § 575.150.1(1); *State v. Ajak*, 543 S.W.3d 43, 48, 50-51

(Mo. 2018). Jacobsen's use of force also gave the deputy reasonable grounds to believe that additional force was justified to remove Jacobsen from the premises.

Jacobsen nonetheless argues that Klinefelter used excessive force by applying pepper spray to Jacobsen's face and eye, punching Jacobsen on the side of his head, and throwing him to the ground before handcuffing him. His argument features *Tatum v. Robinson*, 858 F.3d 544 (8th Cir. 2017), which reiterated that the use of force is least justified against a "non-resisting, non-fleeing individual suspected of a completed, non-violent misdemeanor." *Id*. at 549; *see also Shekleton v. Eichenberger*, 677 F.3d 361, 366-67 (8th Cir. 2012); *Johnson v. Carroll*, 658 F.3d 819, 827-28 (8th Cir. 2011); *Brown v. City of Golden Valley*, 574 F.3d 491, 498 (8th Cir. 2009). *Tatum* held that an officer used unreasonable force when he deployed pepper spray in the face of an accused shoplifter when the arrestee refused promptly to put his hands on a nearby clothes rack and argued angrily with the officer. 858 F.3d at 548, 550. Under those circumstances, it was not reasonable to use pepper spray, even after the suspect was warned, because the suspect did not physically resist the officer and only fourteen seconds had elapsed in the encounter. *Id.* at 549-50.

*Tatum* does not clearly establish that Klinefelter's use of force was unreasonable. Unlike the shoplifter in *Tatum*, Jacobsen shoved the deputy and physically resisted the deputy's efforts to remove him from the premises. Only after Jacobsen used force against Klinefelter did the deputy deploy the pepper spray. Jacobsen then seized the spray canister, and Klinefelter reasonably feared for his safety. Jacobsen eventually pinned Klinefelter to a wall before the arrest was completed. A reasonable officer could have believed that it was reasonable to strike the resisting Jacobsen in the head and take him to the ground for handcuffing. Jacobsen cites no authority in comparable circumstances that clearly establishes a

right to be free from Klinefelter's use of force. Accordingly, Klinefelter is entitled to qualified immunity on Jacobsen's claim under the Fourth Amendment.[2]

Jacobsen also challenges the district court's dismissal of his claims under state law alleging battery and negligent infliction of emotional distress. Under Missouri's doctrine of official immunity, "public officers acting within the scope of their authority are not liable for injuries arising from their discretionary acts or omissions." *Thompson v. Dill*, 930 F.3d 1008, 1015 (8th Cir. 2019) (internal quotation omitted). An officer's decisions to use force and to make an arrest are discretionary. *Boude v. City of Raymore*, 855 F.3d 930, 935 (8th Cir. 2017).

Even so, discretionary acts performed in bad faith or with malice are not protected by official immunity. *Thompson*, 930 F.3d at 1015. An officer acts with malice "when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Boude*, 855 F.3d at 935 (internal quotation omitted). Bad faith is a "dishonest purpose, moral obliquity, conscious wrongdoing, [or] breach of a known duty through some ulterior motive." *Id.* (internal quotation omitted).

Jacobsen contends that Klinefelter's use of force was a bad-faith or malicious attempt "to teach Jacobsen a lesson," because Klinefelter "subjectively thought Jacobsen was not respecting his authority." He cites Klinefelter's personnel

---

[2]Jacobsen argues that the district court's order permitting his expert witness to opine that Klinefelter's use of force exceeded his authority under county policy to perform "extra-duty employment" at the auction was "logically and factually inconsistent with the grant of summary judgment." This argument fails, because even if the expert's opinion has merit, county policy does not dictate what rights are clearly established under the Fourth Amendment. *See Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993).

evaluations over ten years as evidence that the deputy allegedly has a history of getting frustrated, losing his temper, and acting rudely toward others.

The record is insufficient to show that Klinefelter acted with bad faith or malice during the incident in question. Klinefelter gave Jacobsen time to look for a manager, directed several times that Jacobsen leave the auction, warned Jacobsen in advance that he would use pepper spray if the resistance continued, and used elevated force only after Jacobsen used force of his own. Klinefelter also arranged promptly for Jacobsen to receive medical attention after he was subdued. Reports of Klinefelter's behavior on unrelated occasions over the previous ten years do not support an inference of bad faith or malice at the auction under these circumstances. The district court properly applied official immunity to dismiss the state-law claims.

\*   \*   \*

The judgment of the district court is affirmed.

KELLY, Circuit Judge, concurring.

Even viewing the record in Jacobsen's favor, our precedent supports the conclusion that Klinefelter's use of force was not "objectively unreasonable" in light of the particular circumstances of this case. Graham v. Connor, 490 U.S. 386, 397 (1989); see Ehlers v. City of Rapid City, 846 F.3d 1002, 1011 (8th Cir. 2017) (finding no excessive use of force where the officer, after providing at least two warnings, executed a spin takedown and tased an arrestee who "at least appeared to be resisting"). Because there was no Fourth Amendment violation, I would not reach the question of whether the particular right Jacobsen is asserting was clearly established at the time of the incident.

_____