# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2749

_____

Clara Cheeks

*Plaintiff - Appellee*

v.

Jon Belmar, Individually and in his Official Capacity as St. Louis County, Missouri, Chief of Police; Saint Louis County, Missouri; M. Broniec, M.SGT, Trooper of MSHP (Individually); Paul Kempke, SGT., Trooper of MSHP (Individually); B.A. Teague, CPL., Trooper for MSHP; Individually

*Defendant*s

Mark Jakob, Individual capacity;
Frank L. Maloy, as Personal Representative of the Estate of Alex Maloy

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Eastern District of Missouri

_____

Submitted: April 13, 2023
Filed: September 1, 2023

_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.

_____

GRASZ, Circuit Judge.

Clara Cheeks sued under 42 U.S.C. § 1983 on behalf of her son, Mikel Neil, who died in a vehicle accident while fleeing St. Louis County police officers Alex Maloy[1] and Mark Jakob. Cheeks claimed the officers failed to provide medical aid in violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, and the officers filed a motion for summary judgment based on qualified immunity. The district court[2] denied the motion, concluding there were genuine disputes of material facts that prevented it from holding the officers were entitled to immunity at this stage of the proceedings. We affirm.

## I. Background[3]

On August 10, 2018, at approximately 9:30 p.m., Neil crashed into a tree and died at the scene of the accident. The parties agree that Officers Maloy and Jakob had pursued Neil, who was driving a Hyundai Elantra, for an alleged red-light violation. But the parties dispute what led to the accident. Officers Maloy and Jakob claim Neil simply lost control of his car, veered off the road, and collided with a tree. However, Cheeks maintains that Officer Maloy, who was driving the police vehicle, performed a "PIT" maneuver,[4] causing Neil's car to "go into a spin" and crash into the tree. To support this claim, Cheeks submitted evidence from an

---

[1]This action was initially brought against Alex Maloy, who has since passed away. His father, Frank Maloy, was substituted as the proper party. *See* Fed. R. Civ. P. 25(a).

[2]The Honorable Sarah E. Pitlyk, United States District Judge for the Eastern District of Missouri.

[3]We recite the background facts as set forth in the district court's summary judgment opinion. *See Riggs v. Gibbs*, 923 F.3d 518, 521 (8th Cir. 2019) (explaining we must accept as true the facts the district court found were adequately supported unless they are blatantly contradicted by the record). Certain additional facts are taken from the record.

[4]In a PIT maneuver, a police officer will use his or her vehicle to make intentional contact with the suspect's fleeing vehicle to force an end to the pursuit.

eyewitness who stated under oath that he saw the police vehicle bump Neil's vehicle, which caused it to crash. The officers deny utilizing a PIT maneuver. Cheeks contends that video recordings capturing the moments prior to the crash and witness testimony demonstrates Officers Maloy and Jakob either observed or should have observed the crash. Even though the officers did not render aid or call for medical assistance, an eyewitness to the accident called 911 within 30 seconds of the crash. Neil died at the scene.

Cheeks asserts Officers Maloy and Jakob breached their duty to stop and attempt to render aid in violation of the Due Process Clause of the Fourteenth Amendment.[5] The officers argue their failure to render aid did not change the outcome of the accident since emergency responders were called almost immediately. The district court held that Officers Maloy and Jakob were not entitled to qualified immunity because a reasonable jury could find they "were aware of the crash, and that their failure to call for emergency medical assistance violated Neil's constitutional right under the Fourteenth Amendment."

## II. Analysis

"In an interlocutory appeal raising a defense of qualified immunity, this court has jurisdiction to address only an order deciding a purely legal issue of whether the facts alleged by a plaintiff show a violation of clearly established law." *Welch v. Dempsey*, 51 F.4th 809, 812 (8th Cir. 2022). "In other words, 'we lack jurisdiction to consider an argument that the plaintiff has proffered insufficient evidence to create a genuine issue of fact, [but] we have jurisdiction to consider an argument that the disputed facts to which the plaintiff cites are unable to affect the outcome of the suit.'" *Torres v. City of St. Louis*, 39 F.4th 494, 502 (8th Cir. 2022) (quoting *Just v.*

---

[5]While there are cases analyzing police pursuits under substantive due process, neither party briefed a substantive due process claim. "[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008).

*City of St. Louis*, 7 F.4th 761, 766 (8th Cir. 2021)). We employ a de novo standard when doing so. *See Shannon v. Koehler*, 616 F.3d 855, 861–62 (8th Cir. 2010).

"The qualified immunity inquiry involves two questions: '(1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation.'" *McDaniel v. Neal*, 44 F.4th 1085, 1089 (8th Cir. 2022) (quoting *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012)).

The Due Process Clause of the Fourteenth Amendment generally does not provide an "affirmative right to governmental aid," but in "certain limited circumstances," it does "impose[] upon the State affirmative duties of care and protection with respect to particular individuals." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196–98 (1989). "[W]e have recognized that an individual may be constitutionally entitled to police assistance under the Fourteenth Amendment . . . 'in custodial and other settings in which the state has limited the individuals' ability to care for themselves . . . .'" *Gladden v. Richbourg*, 759 F.3d 960, 964–65 (8th Cir. 2014) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992) (en banc)).

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199–200. This "affirmative duty to protect arises not from the State's knowledge of the individual's predicament . . . but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* at 200. Consequently, "custody is effected for purposes of the Fourteenth Amendment only when the state 'so restrains an individual's liberty that it renders him unable to care for himself.'" *Gladden*, 759 F.3d at 965 (quoting *DeShaney*, 489 U.S. at 200). This duty also requires a "governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police." *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983).

-4-

We analyze failure to render medical aid claims under a deliberate indifference standard. *See Tagstrom v. Enockson*, 857 F.2d 502, 503–04 (8th Cir. 1988). "Deliberate indifference has both an objective and a subjective component." *McRaven v. Sanders*, 577 F.3d 974, 980 (8th Cir. 2009) (quoting *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009)). The plaintiff must show (1) "an objectively serious medical need," and (2) "that the defendant knew of and yet deliberately disregarded." *Reese v. Hale*, 58 F.4th 1027, 1030 (8th Cir. 2023).

On appeal, the officers argue Cheeks failed to demonstrate a violation of a constitutionally protected right in two ways: (1) Neil was not in custody, and (2) there was no medical evidence that the delay in aid detrimentally altered Neil's outcome. We address each argument in turn.

## A. Custody

We must begin by analyzing the officers' argument—made for the first time on appeal—that Neil was not in custody for purposes of the Fourteenth Amendment. *See Combs v. The Cordish Cos., Inc.*, 862 F.3d 671, 678–79 (8th Cir. 2017) (explaining we may "consider a newly raised argument 'if it is purely legal and requires no additional factual development . . . .'" (quoting *United States v. Hirani*, 824 F.3d 741, 751 (8th Cir. 2016))). It is undisputed Neil was never apprehended by the officers after the crash, and Officer Jakob alleges he did not witness Neil's accident. Therefore, the critical question is whether Officers Maloy and Jakob "so restrain[ed] [Neil's] liberty" through the use of a PIT maneuver during the police pursuit "that it render[ed] [Neil] unable to care for himself." *Gladden*, 759 F.3d at 965 (quoting *DeShaney*, 489 U.S. at 200).

While the crash itself was not captured on video, Cheeks presented testimony from Lorenzo Johnson who said he witnessed the officers' car bump the side of Neil's car, which caused Neil's car to go into a spin. The district court relied partly on this testimony of contact between vehicles to conclude "[a] reasonable juror could

find, based on circumstantial evidence . . . that [the officers] had actual knowledge of Neil's serious medical need and disregarded it." We do not have jurisdiction to second-guess this determination. *See Thompson v. Dill*, 930 F.3d 1008, 1014 (8th Cir. 2019).

Officers Maloy and Jakob suggest we *do* have jurisdiction to disturb the conclusion because the video recording "blatantly contradicts" the eyewitness testimony. While it is true there is an exception to our normal jurisdiction limitation when a version of the facts "is blatantly contradicted by the record, so that no reasonable jury could believe it," *Scott v. Harris*, 550 U.S. 372, 380 (2007), this exception is not applicable here. The video did not record the accident itself, instead capturing a few moments of the pursuit just prior to the crash. Because the crash itself occurs off screen, Cheeks's contention that Officers Maloy and Jakob performed a PIT maneuver is not so "blatantly contradicted by the record . . . that no reasonable jury could believe it[.]" *Id.*

Nonetheless, the officers argue—again for the first time on appeal—that even assuming such contact between the two vehicles, this does not constitute custody as the term is defined in *Gladden*. We disagree. When the state limits an individual's "freedom to act on his own behalf," *DeShaney*, 489 U.S. at 200, by intentionally conducting a maneuver that causes a vehicle to spin out and collide with a tree, the duty arises "to provide medical care to persons . . . who have been injured while being apprehended by the police." *City of Revere*, 463 U.S. at 244.

Case law in the context of Fourth Amendment claims supports our conclusion. In such cases, the Supreme Court has distinguished between the constitutional implications of a mere police pursuit and an intentional police-imposed accident. A police pursuit itself does not amount to a seizure. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). But it would be considered a seizure if "the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash" as this would have been a "termination of the suspect's freedom of movement[.]" *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596–97 (1989); *see also Scott*, 550 U.S. at 381 (stating the

-6-

officer "does not contest that his decision to terminate the car chase by ramming his bumper into respondent's vehicle constituted a 'seizure'"). Conversely, "no Fourth Amendment seizure would take place where a 'pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit,' but accidentally stopped the suspect by crashing into him." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (quoting *Brower*, 489 U.S. at 597). So, in the Fourth Amendment context, a seizure arises if a police officer intentionally causes a crash to end a police chase whereas no seizure occurs if there is simply an accidental crash. The officers have offered no reason the same would not be true under the Fourteenth Amendment.

To satisfy the second prong of the qualified immunity analysis, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). It is not required that there be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). In other words, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'" *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (quoting *United States v. Lanier*, 520 U.S. 259, 269 (1997)).

As discussed above, it is clearly established that a custodial relationship is formed when law enforcement officers limit an individual's "freedom to act on his own behalf." *DeShaney*, 489 U.S. at 200. This is a "general constitutional rule already identified in the decisional law" that can be applied "with obvious clarity to the specific conduct in question" today. *Hope*, 536 U.S. at 741. If law enforcement officers intentionally force a suspect to crash his car to facilitate the end of a pursuit, the suspect no longer has the liberty "to care for himself." *Gladden*, 759 F.3d at 965 (quoting *DeShaney*, 489 U.S. at 200). When the state limits an individual's "freedom to act on his own behalf," *DeShaney*, 489 U.S. at 200, by *purposely causing a car accident*, a clearly established duty arises "to provide medical care to

-7-

persons . . . who have been injured while being apprehended by the police." *City of Revere*, 463 U.S. at 244. The state of the law gave the officers fair warning that failing to render aid or call for medical assistance for an accident they caused was unconstitutional.

## B. Detrimental Effect

Next, Officers Maloy and Jakob argue that they did not violate Neil's constitutional right because their failure to summon medical aid had no detrimental effect on the outcome of the accident. We disagree. The first prong of the deliberate indifference test, which is utilized in failure to render medical aid claims, asks whether a plaintiff demonstrated an objectively serious medical need. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)). But if a plaintiff "alleges that a *delay* in medical treatment constituted a constitutional deprivation, 'the objective seriousness of the deprivation *should also* be measured by reference to the effect of delay in treatment.'" *Id.* (emphasis added) (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)). In other words, if a plaintiff is relying on a delay in treatment theory, there is an additional requirement to place verifying medical evidence in the record to show there was a detrimental effect caused by the delay. A plaintiff's "failure to place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment precludes a claim of deliberate indifference to medical needs." *Id.*

The officers rely on a series of cases applying this principle to argue Cheeks's failure to offer evidence of a detrimental impact is fatal to her case. *See Jackson v. Riebold*, 815 F.3d 1114, 1120 (8th Cir. 2016) (holding evidence of a detrimental effect was necessary because the plaintiff relied on a delay in treatment theory); *Hancock v. Arnott*, 39 F.4th 482, 487 (8th Cir. 2022) (concluding the plaintiff's failure to establish the detrimental effect of the delay through medical evidence was

-8-

fatal to his claim); *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (holding a plaintiff alleging delay in medical treatment must demonstrate a detrimental effect of the delay with medical evidence); and *Redmond v. Kosinski*, 999 F.3d 1116, 1120–21 (8th Cir. 2021) (determining it was necessary to demonstrate the effect of the deprivation because the plaintiff did "not allege the defendants delayed all treatment, but that they failed to provide the proper treatment at the proper time"). But these cases are distinguishable because they all involve a theory that the officials delayed treatment. Cheeks does not argue that the officers simply delayed calling for medical assistance. Instead, she argues the officers never called for medical assistance—thus denying medical aid altogether. In such cases, where no medical aid was provided, there is no need to provide evidence demonstrating the detrimental effect of the lack of aid. *See Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008) (analyzing a claim where no medical aid was provided without requiring the plaintiff to also demonstrate the detrimental effect). Because the officers failed to render *any* aid, rather than simply delaying in providing it, our precedent does not require Cheeks to demonstrate the detrimental effect of the lack of aid. Thus, we agree with the district court that, viewed in the light most favorable to Cheeks, she has shown a clearly established constitutional violation. *Id.* at 481.

## III. Conclusion

We affirm the district court's denial of summary judgment to Officers Maloy and Jakob.

STRAS, Circuit Judge, dissenting.

Not every tort is a constitutional violation. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 202 (1989) (emphasizing that "the Due Process Clause of the Fourteenth Amendment . . . does not transform" one into the other). The officers may well have had a clear duty to try to save Mikel Neil's life after causing the crash. The only problem is that, if they did, it arose under state tort law rather than the United States Constitution. *Cf.* Restatement (Third) of Torts § 39

(Am. L. Inst. 2012) (describing the duty to provide aid after "creat[ing] a continuing risk of physical harm").

As the court recognizes, the Constitution only creates a duty to aid once officers "take[] a person into . . . *custody* and hold[] him there against his will." *DeShaney*, 489 U.S. at 199–200 (emphasis added). But I could not locate a single case, much less a "robust consensus" of them, that extends it to someone they have seized by force but have not taken into custody. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citation omitted) (explaining what it takes to "clearly establish[]" a constitutional rule); *cf. Scott v. Harris*, 550 U.S. 372, 381 (2007) (suggesting that a police-initiated crash counts as a seizure under the Fourth Amendment); *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989) (same). We can debate whether we *should* extend it to cover this situation, but no officer would be "on notice" that the Constitution *does*. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Qualified immunity applies in just these circumstances. *See id.*

The court, on the other hand, thinks it is "obvious" that Neil was in custody. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (explaining that sometimes all it takes is "a general constitutional rule" that "appl[ies] with obvious clarity to the specific conduct in question" (citation omitted)). In its view, "rendering [Neil] unable to care for himself" was enough. *Gladden v. Richbourg*, 759 F.3d 960, 965 (8th Cir. 2014) (quoting *DeShaney*, 489 U.S. at 200). The problem with relying on "general" rules is that they often fail to "answer the specific and particularized question[s]" that arise in other situations. *Dean v. Bearden*, — F.4th —, 2023 WL 5421629, at *4 (8th Cir. Aug. 23, 2023) (citation omitted). Here, the question is whether something short of custody creates a duty to aid.

*Gladden*, the case that allegedly established the duty, never answered that question. It involved an alcoholic who voluntarily accepted a ride from officers and died of hypothermia several hours later. *See Gladden*, 759 F.3d at 963. We held that, on those facts, there was no Fourth Amendment seizure, much less the "something more" required for custody. *Id.* at 965. *Gladden* simply could not have

answered the "specific and particularized question" presented in this case. *Dean*, 2023 WL 5421629, at \*4 (citation omitted). No seizure meant no holding on whether it created a duty to aid.

Notably, *Gladden* relied on *DeShaney*, which held only that "incarceration, institutionalization, [and] other similar restraint[s] of personal liberty" trigger the duty to provide aid. *DeShaney*, 489 U.S. at 200 ("The affirmative duty to protect arises not from the State's knowledge of the individual's predicament . . . , but from the limitation which it has imposed on his freedom . . . ."); *Gladden*, 759 F.3d at 965; *see also City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (recognizing a duty "to provide medical care" to an injured suspect after he was "apprehended by the police"). It is not obvious that leaving someone in a crashed car is similar to incarceration or institutionalization. *See Wesby*, 583 U.S. at 64 (noting that "obvious case[s]" are "rare" (citation omitted)). And by *Gladden*'s logic, the "fleeting" nature of a seizure by force, *Torres v. Madrid*, 141 S. Ct. 989, 999 (2021), makes it unlikely. *See Gladden*, 759 F.3d at 965 (explaining why seizures are different from custody).

As the Supreme Court has often reminded us, defeating qualified immunity requires a constitutional rule that was "clearly established," not just "suggested by . . . precedent." *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021) (per curiam); *accord, e.g.*, *Wesby*, 583 U.S. at 63. This one was not.

_____